[No. 18106-5-III.   Division Three.   February 22, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY EDMUND ARONHALT, *Appellant*.

---

*Paul J. Wasson II*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

BROWN, J. — Jerry Aronhalt appeals his persistent offender life sentence after current convictions for attempted first degree kidnapping, second degree assault, and second degree rape. We decide the record does not clearly reflect necessary crime classification and comparability determinations for prior out-of-state convictions. We reject Mr. Aronhalt's other contentions regarding right to counsel during interrogation and merger. Accordingly, we affirm Mr. Aronhalt's conviction, vacate the sentence, and remand for further proceedings and resentencing.

## FACTS

Mr. Aronhalt was arrested and ultimately charged with attempted first degree kidnapping, second degree assault and second degree rape. The victim, R.O., testified she was picking up dates (sex for money) April 5, 1998 on First Street in Yakima. When entering a mini-mart, she saw a man she later identified as Mr. Aronhalt watching from a nearby truck.

After purchasing cigarettes, Ms. O. left the store, approached Mr. Aronhalt, and got into his truck when he agreed to a date. They drove to an orchard where Ms. O. said she wanted her money. Mr. Aronhalt refused, grabbed her around the neck, pulled her down toward his exposed genitals, and forced her to perform oral sex. After Mr. Aron-

halt failed to get aroused, Ms. O. again said she wanted her money. Mr. Aronhalt became upset. Though nervous, she continued performing oral sex before beginning to disrobe in the hopes of "get[ting] it over with."

When Ms. O. was wearing merely her bra, Mr. Aronhalt grabbed Ms. O. by the hair and chin and held her head down. Ms. O. asked him not to hurt her. Mr. Aronhalt replied, "I will hurt you" and "I'll get my knife." He took out a knife and held it to Ms. O.'s throat. Ms. O. grabbed the knife-blade, cutting four of her fingers. As the two struggled, Mr. Aronhalt ordered Ms. O. to turn around. She saw he held a pair of handcuffs; she grabbed them and held on. After more struggling, Mr. Aronhalt told her to "get out of here then." Ms. O., still holding the handcuffs, managed to grab her pants before running to a nearby house. Police responded. They collected supporting evidence including the handcuffs and a cigarette and a clump of her hair found at the scene.

Mr. Aronhalt and his truck were identified from a mini-mart surveillance video. He was found and arrested about four days later driving a truck matching the description given by Ms. O. He was read the rights and warnings derived from *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966). He indicated his understanding and willingness to speak with the officers. At the police station about two hours later, Detective Rick Watts read Mr. Aronhalt his *Miranda* rights, warnings, and waiver form. Mr. Aronhalt read the form, stated his understanding, and signed it. The detectives interviewed Mr. Aronhalt for approximately three hours.

During the interview, Mr. Aronhalt said something about possibly getting a lawyer or that he might want to talk to an attorney. The detectives and Mr. Aronhalt could not recall his exact words but reference was made to the possibility of getting a lawyer. Detective Watts then stopped questioning Mr. Aronhalt and asked him several times whether or not he wanted an attorney. Although Mr. Aronhalt does not remember his response, Detective Watts testi-

fied Mr. Aronhalt chose to continue the interview without an attorney. The trial court concluded that Mr. Aronhalt's attorney waiver was voluntary.

A jury convicted Mr. Aronhalt of attempted first degree kidnapping with sexual motivation, second degree assault with sexual motivation, and second degree rape. At sentencing, the State successfully argued Mr. Aronhalt was a persistent offender subject to a life sentence without the possibility of parole under the Persistent Offender Accountability Act (POAA or three strikes law), RCW 9.94A.120(4). In support of the sentencing request, the State offered evidence of 1974 and 1991 Oregon convictions and a 1986 Nevada conviction.

The 1974 convictions for second degree kidnapping, first degree rape and first degree sodomy resulted in a 30-year prison term. The 1986 Nevada conviction for robbery resulted in a 15-year prison term. The 1991 conviction for felon in possession of a firearm resulted in a 20-month prison term. Release or parole dates for the past convictions are not part of our record. Fingerprint evidence together with Oregon and Nevada photographs were submitted to prove Mr. Aronhalt's identity as the defendant in the prior convictions. Certified verdict forms, judgments, clerk minute entries, or court orders were submitted to establish the existence of each conviction. The crime elements and details are supplied in the 1974 indictment (sealed by the trial court to protect the victim's privacy). The elements of the 1986 conviction are supplied by statutory reference and are discussed in part B. of our analysis.

The trial court without classifying the particular crimes, decided the 1974 and 1986 convictions were (under former RCW 9.94A.030(23) (1998)) comparable to "most serious offenses" and amounted to two strikes. The current convictions are the third strike. Accordingly, Mr. Aronhalt was sentenced to life without the possibility of parole. He then appealed.

## ANALYSIS
### A. Request for Attorney

The issue is whether the trial court erred in finding Mr. Aronhalt's request for an attorney was equivocal and concluding as a matter of law that Mr. Aronhalt voluntarily waived his right to counsel.

██ Under *Miranda*, a suspect must be advised of the right to an attorney during a custodial police interrogation. *Miranda*, 384 U.S. at 469-73. The State has the burden of establishing waiver. *State v. Earls*, 116 Wn.2d 364, 378-79, 805 P.2d 211 (1991). A waiver must be knowing and intelligent. *Davis v. United States*, 512 U.S. 452, 458, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). Officers must cease questioning the moment a suspect makes an unequivocal request for an attorney. *Id.* at 459. When the accused makes an equivocal request for an attorney, police questioning may continue for the sole purpose of clarifying the request. *State v. Robtoy*, 98 Wn.2d 30, 38-39, 653 P.2d 284 (1982). The courts use an objective standard when reviewing this question. *Davis*, 512 U.S. at 459. The test is whether a reasonable officer would know the defendant's statement was a request for an attorney. *Id.*

█ The trial court's factual determinations become verities if based upon substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). The legal conclusions flowing from the facts are questions of law reviewed de novo. *See State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

The trial court found:

> During the interview Mr. Aronhalt made an equivocal request for an attorney. At that time Detective Watts indicated to Mr. Aronhalt that if he wanted an attorney all he had to do was say so and the interview would stop. Detective Watts worked to clarify the equivocal request for an attorney and did not resume questioning designed to elicit incriminating answers until after Mr. Aronhalt unequivocally waived his right to counsel.

After signing a waiver, Mr. Aronhalt "made reference to the possibility that he should get a lawyer." Questioning ceased. Then, Mr. Aronhalt was asked several times whether he wanted a lawyer. Even though Mr. Aronhalt did not remember how he responded, Detective Watts was clear. The time was noted when Mr. Aronhalt again waived his right to an attorney and basically said, "we can continue." Under these circumstances, an officer may clarify by asking the direct question: "Do you want an attorney?" *State v. Smith*, 34 Wn. App. 405, 409, 661 P.2d 1001 (1983). Under these circumstances, the trial court did not err.

### B. Persistent Offender

The issue is whether the trial court erred by sentencing Mr. Aronhalt to life without the possibility of parole and concluding the persistent offender requirements of RCW 9.94A.120(4), including the wash out provisions of RCW 9.94A.360(2) were satisfied.

A person is a persistent offender when he or she has been convicted of a "most serious offense" and has twice before been convicted of an offense that would be considered a most serious offense in Washington. Former RCW 9.94A.030(27)(a)(ii) (1998). A "most serious offense" includes "any out-of-state conviction for an offense that under the laws of this state would be a felony classified as a most serious offense under this subsection." Former RCW 9.94A.030(23)(u) (1998).

Under present RCW 9.94A.360(2) Class A and sex prior felony convictions are always included in an offender score. Recently our supreme court decided the 1990 amendments to RCW 9.94A.360(2) specifying that sex crimes do not wash out did not revive previously washed out crimes. *State v. Cruz*, 139 Wn.2d 186, 192-93, 985 P.2d 384 (1999) (1990 POAA amendments prospective).

The facts in *Cruz* and here are remarkably similar. In 1994, Mr. Cruz was charged with a sex crime. *Id.* at 187.

His record contained a 1975 rape conviction and a 1989 conviction for attempted first degree burglary. *Id.* at 188. Mr. Cruz was paroled in 1977 and under former RCW 9.94A.360(2) (Supp. 1988) his 1975 conviction washed out in 1987 before the burglary conviction. *Id.* But for eliminating sex crimes from the wash out provisions of RCW 9.94A.360(2), Mr. Cruz's 1975 sex conviction would not have counted as a strike under the POAA.

 ■ *Cruz* underscores the need to accurately know both the classification and the parole date for each prior offense so the wash out rules may be properly applied and reviewed. *See State v. McCorkle*, 137 Wn.2d 490, 498, 973 P.2d 461 (1999) (classification is necessary to apply wash out rules). For example, under RCW 9.94A.360(2), Class B felonies are not considered after 10 years, and Class C felonies wash out after 5 years. Our review is complicated by not knowing the crime classifications or release dates in order to accurately apply the wash out rules. The trial court treated the 1974 convictions as one strike without stating which particular crime constituted the first strike. Under these circumstances, remand is necessary to give the trial court an opportunity to classify the crimes, state the strike crime(s), and find release facts bearing on the wash out rules before applying the POAA consistent with *Cruz*.

As guidance and in the interests of judicial economy, Mr. Aronhalt does not now contest that he is the defendant in each of the out-of-state convictions; the record is clear that he committed the crimes in view of the substantial evidence in the form of fingerprints and photographs. Thus, no further fact finding is necessary to establish his identity. Similarly, we conclude the evidence supports the existence of the convictions. But, classification of the crimes is necessary to apply the wash out rules under *McCorkle*. Further, some evidence of the robbery facts may be developed to enhance review. *See State v. Ford*, 137 Wn.2d 472, 480-81, 973 P.2d 452 (1999) (when evidence of out-of-state convic-

tion is insufficient to determine classification, remand is necessary).

The following discussion illustrates how to compare offenses. The elements of Mr. Aronhalt's three 1974 Oregon convictions can be found within the charging document introduced as Exhibit B at the sentencing hearing. *See State v. Weiand*, 66 Wn. App. 29, 31 n.5, 831 P.2d 749 (1992) (the elements of the foreign crime can be obtained from the out-of-state statute or the out-of-state charge, assuming it contains the elements of the crime). The elements of the Oregon first degree rape conviction appear identical to our second degree rape, a Class A felony. RCW 9A.44.050. Classification and comparability for the sodomy may be compared to our rape laws for possible classification.

Although robbery details are missing, the statutory elements may be derived from the referenced Nevada Revised Statute, partly providing:

> Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

NEV. REV. STAT. § 200.380(1) (1985).

The punishment range is not less than 1 year or more than 15 years. The elements of robbery in Nevada are comparable, but not identical to the general definition of robbery found in RCW 9A.56.190. Robbery degrees are not included in the Nevada statute. In Washington, first degree robbery is a Class A felony. On the other hand, second

degree robbery is a Class B felony meeting a general defini-
tion comparable to the Nevada law. Both degrees of rob-
bery are most serious offenses under former RCW 9.94A-
.030(23) (1998).

█ Next, Mr. Aronhalt argues the Nevada conviction
should not be considered because it is not supported by a
guilty plea and not clearly valid on its face. In *State v. Am-
mons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986),
the court held that once the State proves the existence of a
prior conviction, it does not have to prove the prior convic-
tion is constitutionally valid unless it has been previously
declared invalid, or is facially invalid. *Id.* at 187. A facially
invalid conviction is one that evidences infirmities of a
constitutional magnitude without further elaboration. *Id.*
at 188. The court in *State v. Manussier*, 129 Wn.2d 652, 921
P.2d 473 (1996), extended *Ammons* to apply to persistent
offender proceedings, and held that a prosecutor is not
required to prove the constitutional validity of prior convic-
tions in a persistent offender proceeding. *Id.* at 682; *see*
*State v. Burton*, 92 Wn. App. 114, 117, 960 P.2d 480 (1998)
(affirmative showing that constitutional safeguards were
not provided is required), *review denied*, 137 Wn.2d 1017
(1999). Mr. Aronhalt did not introduce any affirmative evi-
dence to show he was not aware of his rights when he
pleaded guilty. Under these circumstances, the trial court
correctly ruled the conviction was facially valid.

### C. Merger

The issue is whether the trial court erred by not merging
Mr. Aronhalt's assault and kidnapping convictions into the
second degree rape conviction.

Mr. Aronhalt relies upon *State v. Johnson*, 92 Wn.2d 671,
600 P.2d 1249 (1979) (kidnapping and assault were inciden-
tal to rape and merged). The State argues *Johnson* does
not apply, and under the *Blockburger* same elements test,
the crimes should not be merged. *Blockburger v. United
States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306
(1932).

■ Here, Mr. Aronhalt forced the victim to perform oral sex, next he held a knife to her throat, and finally he attempted to use handcuffs on the victim. Each of these events occurred separately and in sequence. One was not incidental to another. Moreover, the merger doctrine "is relevant only when a crime is 'elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code.'" *State v. Rivera*, 85 Wn. App. 296, 302, 932 P.2d 701 (1997) (quoting *State v. Eaton*, 82 Wn. App. 723, 730, 919 P.2d 116 (1996)).

## CONCLUSION

We hold the trial court did not err when deciding Mr. Aronhalt waived his right to an attorney or when applying merger law to these facts, but failed to properly classify and compare prior out-of-state convictions. Accordingly, we affirm the convictions, vacate Mr. Aronhalt's sentence, and remand for further proceedings and resentencing consistent with this opinion.

KURTZ, C.J., and SWEENEY, J., concur.

Review denied at 141 Wn.2d 1012 (2000).