59 P.3d 58 (2002)
148 Wash.2d 91
STATE of Washington, Respondent,
v.
John Phillip VICKERS, Petitioner.
State of Washington, Respondent,
v.
Paul Thomas Vickers, Petitioner.
No. 71667-6.
Supreme Court of Washington, En Banc.
Argued November 7, 2002.
Decided December 12, 2002.
*60 Mary High, Pattie Mhoon, Tacoma, for Petitioner.
Gerald Horne, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Kathleen Proctor, Deputy, Tacoma, for Respondent.
Walla Walla City Attorney's Office, Timothy Donaldson, Asst., Amicus Curiae on Behalf of City of Walla Walla.
*59 SMITH, J.
In consolidated cases Petitioners John Phillip Vickers (John Vickers) and Paul Thomas Vickers (Paul Vickers) seek review of a decision of the Court of Appeals, Division Two, both petitioners challenging the constitutional validity of a search warrant; Petitioner Paul Vickers challenging a photomontage as impermissibly suggestive; and Petitioner John Vickers challenging evidence of his prior conviction used to establish his status as a persistent offender.
The Court of Appeals affirmed their convictions in the Pierce County Superior Court of first degree felony murder and attempted first degree murder while armed with a firearm (John Vickers) and aggravated first degree murder and attempted first degree murder while armed with a firearm (Paul Vickers).
We granted review. We affirm.

QUESTIONS PRESENTED
The questions presented in these consolidated cases are (1) whether the affidavit in support of the search warrant established probable cause; (2) whether the confidential informant's basis of knowledge and erroneous reference to a calendar date invalidated the search warrant, thus requiring suppression of all evidence recovered in the search; (3) whether there was substantial evidence to support the trial court's findings of fact and conclusions of law; (4) whether the photomontage used to identify Petitioner Paul *61 Vickers was impermissibly suggestive; and (5) whether the State was required to prove beyond a reasonable doubt the validity of a prior conviction used to establish the status of Petitioner John Vickers as a persistent offender.

STATEMENT OF FACTS
On January 24, 1998, sometime before midnight,[1] two men entered the 38th Street Pub (The Pub) located at 1209 South 38th Street in Tacoma, Washington. A separate room of The Pub served as a card room where the game of blackjack was played with a professional dealer.[2] Present at The Pub were several patrons and employees, security guard Robert Williams and his fiancée Ms. Brenda Bottrel, blackjack dealer Ms. Theresa Dill, and bartender Ms. Gloria Cox.[3] The two men, described as either white or hispanic, 5 feet 6 inches to 5 feet 9 inches tall, wore denim pants, shirts, and bandannas tied over their heads.[4] The men stayed at The Pub for 10 to 15 minutes, during which time they ordered two bottles of beer from bartender Cox. One empty bottle left behind contained saliva and remnants of chewing tobacco.[5] Blackjack dealer Dill recalled that the two men entered the card room where she was dealing blackjack and, when she asked if they would like to play, they responded that they just were looking around.[6] The men shortly after that time left The Pub.[7]
Sometime around 11:00 p.m. that night, Ms. Dill became ill and left The Pub.[8] On her way out, she noticed a black car parked at the side of The Pub with two persons seated inside.[9] She testified she thought it unusual for an automobile to be parked in that location when the parking lot was not full.[10]
Just after midnight in the early morning of January 25, 1998, two men wearing ski masks, brandishing a shotgun and an automatic rifle, burst through The Pub entrance doors, immediately fired several rounds, and ordered everyone to the floor.[11] Several shots struck Mr. Williams, the security guard, whose protective vest caught most of the bullets, and struck his fiancée Ms. Bottrel, who later died at the scene.[12] The two armed intruders took about $1,500-$1,600, placed it in a white bag, and left The Pub.[13] Witnesses saw them walk across the parking lot to an adjoining alley, get into an older car painted flat black, and drive away.[14] Physical evidence collected at The Pub by the Tacoma Police Department included five 7.62 mm shell casings and two 12-gauge shotgun shells.[15]
Sometime prior to the robbery and homicide on January 25, 1998, Ms. Tary Rodocker contacted Pierce County Detective Bruce Larson after she became concerned over conversations she had with Petitioners Paul and John Vickers about the idea of committing a robbery and going in "shooting."[16] On the evening of January 24, 1998 Petitioners John and Paul Vickers took the ferry from Anderson Island to Steilacoom and went to The Pub in Tacoma. On the morning of *62 January 25, 1998 Petitioners took the ferry from Steilacoom back to Anderson Island.
On January 26, 1998, the day after the robbery and homicide, Ms. Rodocker noticed that Petitioner John Vickers returned with money he did not have before leaving Anderson Island two days before.[17] Upon hearing about the robbery Ms. Rodocker and Phil Vickers, Petitioners' brother, contacted the Tacoma Police Department relaying their suspicions that Petitioners Paul and John Vickers might have committed the robbery and homicide at The Pub on January 25, 1998.[18] Ms. Rodocker reported that Petitioner Paul Vickers owned an SKS automatic rifle, a 12-gauge shotgun, and a flat-black Plymouth Arrow automobile, and that both brothers left Anderson Island by ferry on the day of the shooting.[19]
Based on information given by Ms. Rodocker, Tacoma Police Detectives T. Davidson and B. Larson submitted under oath a complaint for a search warrant for the Anderson Island residence of Ms. Rachel Krause and Petitioner Paul Vickers, and his automobile, a 1980 Plymouth Arrow.[20] The search warrant was issued by Judge Brian Tollefson on January 30, 1998. It was executed by Detective Davidson who found (1) a spent shotgun shell, (2) a live shotgun shell, (3) a can of Skoal chewing tobacco, (4) a black wallet with John Vickers' Washington State I.D. card and a receipt plus two $10.00 bills, (5) a Kalashnikov sporting rifle manual, (6) a white bag with miscellaneous ammunition, (7) two bandannas, (8) a live 7.62 × 39 round (ammunition), (9) a box containing an SKS .45 7.62 × 39 semiautomatic rifle manual, a rifle stock, bayonet, and banana clip, (10) an Electro Dot rifle sight, (11) two rifle magazines and notebook, (12) dominion and control paperwork, (13) a bandanna, and (14) vehicle registration.[21]
Observing photomontages, Ms. Theresa Dill identified both Petitioner Paul Vickers and Petitioner John Vickers as the two men who had been in The Pub on January 24, 1998.[22] Ms. Gloria Cox also identified Petitioner John Vickers as one of the two men who had been in The Pub the night before the shooting.[23]
Petitioners John Vickers and Paul Vickers were arrested and charged in the Pierce County Superior Court on February 2, 1998 with one count of first degree murder with aggravating circumstances and one count of attempted murder in the first degree.[24] The information was amended on October 29, 1998 to charge one count of first degree murder with aggravating circumstances and, in the alternative, first degree felony murder, and one count of attempted first degree murder, with firearm enhancements on both counts.[25]
Petitioners' cases were consolidated in the Superior Court. Both Petitioners in pretrial motions moved for severance.[26] The trial court, the Honorable Rosanne Buckner, denied the motions, stating that Petitioners were charged as accomplices and that evidence against one was evidence against the other.[27] Both Petitioners additionally moved to suppress evidence seized during the search, claiming the search warrant was defective. Petitioner Paul Vickers also moved to suppress the photograph identification.[28] *63 The court conducted a suppression hearing[29] and denied the motions on May 10, 1999. The court issued an oral ruling but declined to enter written findings of facts and conclusions of law at that time.[30]
On July 29, 1999, the jury found Petitioner John Vickers "guilty" of first degree felony murder and attempted first degree murder, with weapon enhancements on both counts[31] and found Petitioner Paul Vickers "guilty" of aggravated first degree murder and attempted first degree murder, with weapon enhancements on both counts.[32] The trial court on July 29, 1999 sentenced Petitioner Paul Vickers to mandatory life imprisonment without the possibility of parole and sentenced Petitioner John Vickers, as a persistent offender under former RCW 9.94A.120(4) (2000), to life imprisonment.[33]
Petitioners appealed their convictions to the Court of Appeals, Division Two, assigning error to the trial court's denial of their motions to suppress the evidence obtained by search warrant. Petitioner Paul Vickers claimed the trial court erred in permitting his identification from suggestive photomontages.[34] The court in a partly published opinion on August 24, 2001 affirmed the convictions and sentences and concluded the photomontage did not impermissibly suggest identification of Petitioner Paul Vickers.[35]
On two occasions, once before and again after the Court of Appeals issued its opinion, the State asked the trial court to issue written findings of fact and conclusions of law.[36] Judge Buckner declined both requests and suggested that the State make its request to this court.[37] On July 16, 2002 the State moved this court for an order authorizing the trial court to enter belated written findings of fact and conclusions of law.[38] Supreme Court Commissioner Geoffrey Crooks in a ruling on August 6, 2002 granted the motion:

*64 The trial court is hereby authorized to enter findings of fact and conclusions of law on the suppression motion, so long as it does so not later than September 10, 2002. The parties may then file supplemental briefs addressing those findings and conclusions (if entered) not later than October 10, 2002. Those supplemental briefs will afford petitioners the opportunity to argue that belated findings should not be considered in the circumstances presented here.[39]
As authorized by the Supreme Court Commissioner, the trial court on August 30, 2002 entered findings of fact and conclusions of law as follows:
THIS MATTER having come on before the Honorable ROSANNE BUCKNER, Judge of the [Pierce County Superior Court], for ruling on the CrR 3.6 motion, the 10th day of May, 1999, the defendant, John Vickers, having been present and represented by his attorney, MICHAEL KAWAMURA, and the defendant, Paul Vickers, having been present and represented by his attorney, BRYAN HERSHMAN, and the State being represented by Deputy Prosecuting Attorney GERALD HORNE and PATRICK COOPER, and the court having observed the demeanor and heard the testimony of the witnesses and having considered the arguments of counsel and being duly advised in all matters, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

I.
The search warrant and complaint dated January 30, 1998, is hereby incorporated by reference. A copy is attached as Appendix A.[40]

II.
The search warrant was served on January 30, 1998. The locations searched were the 10408 Edgewood Drive address, a trailer; 10717 Anchor Place, a tri-level home; and a 1980 Plymouth Arrow car.

III.
Items taken into evidence from the Edgewood Drive address were shotgun shells, a can of Skoal chewing tobacco, a valet with identification to John Vickers, a Kalashnikov rifle manual, a spiral notebook and two gun catalogs, an SKS rifle box, manual, bayonet, stock, and tripod, a live 7.62 round, a rifle sight, a canvas bag with miscellaneous ammunition, paperwork with Paul Vickers name on it, and two bandanas.

IV.
Items taken into evidence from the Anchor Place address were a maroon plaid flannel shirt, a green bandana, and two shotgun shells.

V.
Items taken into evidence from the 1980 Plymouth Arrow were a bandana, and the vehicle registration.

VI.
The defense made three challenges to the search warrant. Defendants contend the Aguilar/Spinelli test was not met for purposes of the confidential informant and her information may not be considered in determining probable cause. Secondly, defendants contend the information on the time and date of when the Vickers brothers left the island on the ferry was exculpatory and defeated probable cause. Finally, defendants contend the officers intentionally misrepresented the height and weight, and the possible race of the robbery suspects and that this constitutes a Franks violation. The evidence at the hearing addressed these claims.

*65 VII.
Detective Tom Davidson was the author of the search warrant. The court finds him credible as a witness.

VIII.
Tary Rodocker was the confidential informant. She testified at the hearing at the request of the defense. She confirmed that she provided the information which Detective Davidson said was related to him for purposes of the search warrant.

IX.
Tary Rodocker testified she saw the defendants leave Anderson Island on 1/24/98, not 1/25/98 and that this is what she related to Detective Davidson. Detective Davidson made an error in the date written in the search warrant for leaving and returning to Anderson Island. The crime occurred shortly after midnight, 1/25/98. The detective put the correct dates in a supplemental police report. The use of the incorrect date was neither intentional, nor a deliberate misrepresentation by the detective.

X.
Tary Rodocker confirmed her information was firsthand knowledge except about the time when the Vickers returned on ferry to Anderson Island. Tary Rodocker also testified she saw Paul Vickers on 1/28/98, Wednesday, at the store. He had on new clothes, buying cigarettes and beer, and declined repayment of a $4 debt. A common sense reading of the affidavit results in the conclusion that the confidential informant's basis of knowledge was firsthand based upon what the informant had seen and heard from the Vickers brothers.

XI.
There were fifteen to eighteen people in the Pub at the time of the shooting according to Detective Davidson. The majority of these people could not identify a face of the suspects.

XII.
Edgar Spencer, a retired officer, thought one of the suspects was black. Detective Davidson knew Mr. Spencer from his time with the Tacoma Police Department. Mr. Spencer had some difficulties during his time with the department. Mr. Spencer also appeared to be very intoxicated this night.

XIII.
Witnesses Sang Cha and Shirley Hagan stated a suspect(s) may have been a black male. Detective Davidson noted that these identifications were made based on seeing only the eyes and mouth. The detective questioned their accuracy because of the witnesses' location, and when the viewing took place. In addition, other descriptions also noted the masks as having black around the eyes and face.

XIV.
Harvey Brooks, Michelle Stewart and Gloria Cox believed the suspects were white according to Detective Davidson. Gloria Cox saw the suspects prior to entering the tavern. Harvey Brooks stated he saw an arm when it was reaching for the money taken from a cash box.

XV.
One witness listed a height for a suspect as 6'4. Benjamin Hohn listed the suspects as 5'6 to 5'8. Hohn was off to the side when the suspects entered and may have had a better view. Hohn though it was between 5'5 and 6', but then said they were not six foot. Witness information primarily listed the suspects as between 5'8 and 5'11. Gloria Cox also had a view prior to the robbery/homicide and put the height of one at 5'7 to 5'8. A nearby homeowner also described a possible suspect who went by her home as being 5'6 to 5'7. It was also believed one was taller than another.

*66 XVI.
The detective made his decision for the description in the search warrant of the suspects after considering who had the best opportunity to view and the time of the view, whether before, during, or after the crime. He also tried to create a composite description of the robbery suspects. Based on this, the detective put the race in as unknown. The height and weight was put in as 5'7 to 5'8, thin build, and the other as 5'9 to 5'10, thin build.

XVII.
The detective did not make any intentional, nor deliberate misrepresentations or omissions in the search warrant.

CONCLUSIONS OF LAW

I.
The affidavit contains sufficient information as to the confidential informant's past acts of giving accurate information, and controlled buys, to establish her reliability.

II.
The content of the affidavit establishes the confidential informant's basis of knowledge as being firsthand knowledge.

III.
The probable cause for the issuance of the search warrant includes; one, prior to the Pub robbery/homicide, Paul and John Vickers had spoken of committing a robbery in the manner the Pub robbery occurred; two, Paul Vickers owned guns similar to those used in the Pub robbery/homicide and had plenty of ammunition; three, Paul Vickers owned a car similar to one seen at the crime scene. This car was distinctive because it was painted with a flat black paint; four, the general description, height and build, of the robbery/homicide, who could have been "casing" the business matched Paul and John Vicker [sic]. These men wore bandanas covering their heads, which the Vickers were known to do; six, Paul and John Vickers were not on Anderson Island at the relevant time; seven, Paul and John Vickers were impoverished before the robbery, but not after; and eight, Both Paul and John Vickers had lengthy criminal histories. John Vickers had a prior conviction for masked armed robbery.
DONE IN OPEN COURT this 30 day of August 2002.
 s/Rosanne Buckner
 ROSANNE BUCKNER
Petitioners filed separate petitions for review. On May 1, 2002 we granted review and consolidated the cases.[41]

DISCUSSION

SUFFICIENCY OF THE SEARCH WARRANT
In challenging the validity of the search warrant Petitioners advance three arguments: (1) the affidavit did not establish probable cause; (2) the affidavit did not satisfy the "basis of knowledge" portion of the two-part Aguilar-Spinelli test;[42] and (3) the affidavit made material misrepresentations which resulted in an invalid search.

PROBABLE CAUSE
The warrant clause of the Fourth Amendment of the United States Constitution and article 1, section 7[43] of the Washington Constitution require that a search warrant be issued upon a determination of probable cause based upon "facts and circumstances sufficient to establish a reasonable *67 inference" that criminal activity is occurring or that contraband exists at a certain location."[44] Probable cause is established when an affidavit supporting a search warrant provides sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in the criminal activity.[45] The affidavit in support of the search warrant must be based on more than suspicion or mere personal belief that evidence of the crime will be found on the premises searched.[46] A magistrate exercises judicial discretion in determining whether to issue a warrant. That decision is reviewed for abuse of discretion.[47] This court generally accords great deference to the magistrate and views the supporting affidavit for a search warrant in the light of common sense.[48] Doubts concerning the existence of probable cause are generally resolved in favor of issuing the search warrant.[49]
Petitioners first argue that the paragraphs in the affidavit, other than paragraph 5 and 7 as identified in their briefs, merely recite facts related to the shooting, Petitioners' biographical information, and the informant's mere suspicion that Petitioners committed the crime. The paragraphs referred to as "5" and "7" do not bear those numbers in the affidavit. However, we identify the paragraphs by reference to the text.
"Paragraph 5" reads:
On 1-27-98, Affiants were contacted by a confidential and reliable informant. The confidential and reliable informant stated that he/she had heard about the robbery/homicide on the news and read about it in the newspaper. The confidential and reliable informant stated that PAUL and JOHN VICKERS had been talking about doing a bank robbery for some time. Each time the VICKERS brothers would discuss this, PAUL VICKERS would say that the only way to do a robbery was to fire shots immediately upon entering the premise, to catch everyone off guard, that the mistake people doing robberies always made was not firing shots immediately. The confidential and reliable informant stated that PAUL VICKERS owned both a .12 gauge, pump-action shotgun and semi-automatic assault rifle, that he/she thought was an SKS. Affiants are aware that an SKS fires 7.62 caliber rounds. In addition, the confidential and reliable informant stated that PAUL VICKERS owned and drove an older, black Plymouth Arrow that was hand painted. The confidential and reliable informant also stated that PAUL VICKERS possessed lots of ammunition for both the rifle and the shotgun.
"Paragraph 7" reads:
The confidential and reliable informant stated that on 1-25-98, he/she saw JOHN and PAUL VICKERS, and another unknown white male, board the afternoon ferry at Anderson Island, bound for the Steilacoom dock. The confidential and reliable informant stated that neither PAUL [n]or JOHN VICKERS returned to Anderson Island that night. The confidential and reliable informant stated that on 1-26-98, at 9:30 a.m., JOHN VICKERS showed up at his girlfriend's house with a lot of money. The confidential and reliable informant stated that when JOHN and PAUL VICKERS had left the island on 1-25-98, they were broke.
*68 Petitioners assert that "paragraph 5" does not meet the basic requirement of probable cause because it discusses a bank robbery instead of a casino or bar robbery, it does not detail or indicate an actual plan, and Petitioners' possession of similar weapons to those used in the robbery was not verified by police authorities. Petitioners also assert that, although the court found a typographical error in the date Petitioners allegedly left Anderson Island and returned, "paragraph 7" does not establish probable cause because the reviewing court can only consider its sufficiency within the four corners of the document considered by the magistrate, and that erroneous reference to the date of August 25, 1998 exculpates Petitioners.
Reading "paragraph 5" as Petitioners urge is inconsistent with established case law. A single fact in an affidavit, when viewed in isolation, may not constitute probable cause but, when read together with other facts stated in the document, the affidavit satisfies the requirement for evidence necessary to establish probable cause.
In this case, the affidavit indicates that the confidential and reliable informant either engaged in or heard conversations between Petitioners about executing a robbery in a distinct manner consistent with the manner of the robbery actually committed at The Pub on January 25, 1998. The distinction between robbery of a bank and robbery of a casino is negligible and inconsequential. It is more significant that a robbery was in fact committed in a manner distinctly similar to the one previously discussed by Petitioners. In addition, Petitioners were known to possess the type of weapons and the automobile fitting the description of those used in the robbery and homicide.[50] Petitioners fit the description of the two men who police officers suspected entered The Pub, looked around, and left several hours before the robbery and homicide. Independent police investigation corroborated the facts that Petitioners had multiple felony convictions, one of which was for robbery,[51] that they fit the physical descriptions of the two men who entered The Pub, and that Petitioner Paul Vickers possessed the type of automobile the informant claimed he owned, a black hand-painted Plymouth Arrow. These facts, when considered with other facts asserted in the affidavit, provided a substantial basis to support the magistrate's finding of probable cause. Under the reasonable person test,[52] the facts stated in the affidavit were sufficient to conclude that Petitioners were probably involved in the robbery and homicide at The Pub. A finding of probable cause for issuance of the search warrant was not an abuse of discretion by the magistrate, Judge Brian Tollefson.
Even without "paragraph 7," the other facts stated in the affidavit would be sufficient to establish probable cause. Although the magistrate only considers information presented at the time of the warrant request, the erroneous date of January 25, 1998 instead of the correct date of January 24, 1998 can fairly be characterized as a scrivener's error in the context of other pertinent facts recited in the affidavit[53] or, as stated by the trial court, an "innocent error."

BASIS OF KNOWLEDGE
Addressing an informant's tip supporting a search warrant, in State v. Jackson we announced the appropriate analysis for challenging the validity of a search warrant.[54] We declined to follow the Fourth Amendment analysis utilized by the United States Supreme Court in Illinois v. Gates[55] and affirmed adherence to the two-part *69 Aguilar-Spinelli test established in Aguilar v. Texas and Spinelli v. United States[56] in response to challenges to the validity of search warrants reviewed under Washington Constitution article 1, section 7.[57] Under that test, to establish probable cause for issuance of a search warrant based upon an informant's tip detailed in an affidavit, the affidavit must demonstrate the informant's (1) basis of knowledge and (2) veracity.[58]
To satisfy both parts of the Aguilar-Spinelli test, a magistrate must require an affidavit to state underlying circumstances which the magistrate may draw upon to conclude the informant was credible and obtained the information in a reliable manner.[59] If either or both parts of the Aguilar-Spinelli test are deficient, probable cause may yet be satisfied by independent police investigation corroborating the informant's tip to the extent it cures the deficiency.[60] The knowledge part is satisfied by a showing that the information provided by the informant was based upon personal knowledge.[61]
Petitioners do not question the veracity of the confidential informant. They only claim the affidavit did not establish the Aguilar-Spinelli basis of knowledge test to support the search warrant. The affidavit, they contend, does not indicate the manner in which the informant obtained the information about Petitioners and whether it was based on personal knowledge.[62] They cite State v. Jackson, State v. Gunwall and State v. Wolken for the proposition that the Aguilar-Spinelli basis of knowledge test can only be satisfied by showing that the informant personally observed the facts asserted and is conveying firsthand information.[63]
Those cases are distinguishable. They involved investigations of drug transactions in which the informants had personally seen drugs or had been personally involved in purchasing drugs. In Jackson, the basis of knowledge test was not satisfied because the informant did not indicate how he knew the defendant was a drug distributor.[64] But the basis of knowledge test was satisfied in Wolken and Gunwall in which the informant personally saw the drugs in the defendant's possession or was involved in purchasing drugs.[65] It is not necessary to show that the informant in this case actually saw the weapons or ammunition used in the robbery to satisfy this test. It is sufficient to show that the informant had personal knowledge of the facts asserted in the affidavit.
In this case, the informant indicated she had personal knowledge of conversations Petitioners had concerning commission of a robbery, and of Petitioner Paul Vickers saying he would commit the robbery by firing shots immediately upon entering the premises to catch everyone off guard. In addition, the informant stated she personally observed Petitioners board the ferry bound for Steilacoom on January 24, 1998 and that they did not return to Anderson Island that night. Personal observations in this case sufficiently satisfied the Aguilar-Spinelli basis of knowledge test.

MATERIAL MISREPRESENTATIONS
Petitioners argue that material misrepresentations prevented the magistrate *70 from accurately assessing the informant's reliability because much of the informant's information was inaccurate and based on hearsay. They note that the affidavit stated Petitioners talked about a bank robbery and not about a pub or casino robbery; that Ms. Rachel Krause told the informant Petitioners had left Anderson Island that night and had money after the shooting; that the informant did not see the ammunition and told police officers that Paul Vickers owned an AKC and a shotgun but not an SKS and a pump-action shotgun.
Petitioners' challenge does not satisfy the requirements enunciated in Franks v. Delaware.[66] Under that case the Fourth Amendment requires a hearing at the request of the defendant when the defendant makes a substantial preliminary showing that misrepresentations were made deliberately or recklessly by the affiant in a search warrant affidavit, and the misstated information was material or relevant to the magistrate's determination of probable cause.[67] "`Allegations of negligence or innocent mistake are insufficient.'" There must be allegations of deliberate falsehood or of a reckless disregard of the truth, accompanied by an offer of proof.[68]
Even though Petitioners did not establish that the affiant deliberately or recklessly made misrepresentations in this case, the trial court nevertheless conducted a Franks hearing. In that hearing the affiant, Detective Davidson, testified that the confidential informant in fact personally saw Petitioners leave Anderson Island by ferry, and the facts that Petitioners did not return that night and returned the following day with money was related by a second-hand source, Ms. Rachel Krause. Even if the informant did not have personal knowledge that Petitioners did not return to Anderson Island, that would not render the search warrant invalid. The affidavit would still be sufficient to support a finding of probable cause.[69]
The other alleged misrepresentations are not material to a determination of probable cause for the search. It is of no particular significance that the affidavit referred to a bank robbery instead of robbery of a pub or casino and referred to an SKS instead of an AKC, and a pump-action shotgun instead of a shotgun. In the suppression hearing, Judge Buckner concluded the affiant did not deliberately provide any misleading information and the incorrect date of Petitioners' departure to Steilacoom was an innocent mistake.[70]

CHALLENGE TO FINDINGS OF FACT
Petitioners' assignments of error to findings of fact VII, VIII, and XVI do not merit discussion.[71] Only assignments of error to findings of fact IX, X, and XVII deserve attention.
Finding of fact IX states:
Tary Rodocker testified she saw the defendants leave Anderson Island on 1/24/98, not 1/25/98 and that this is what she related to Detective Davidson. Detective Davidson made an error in the date written in the search warrant for leaving and returning to Anderson Island. The crime occurred shortly after midnight, 1/25/98. The detective put the correct dates in a supplemental police report. The use of the incorrect date was neither intentional, nor a deliberate misrepresentation.
Finding of fact X states:
Tary Rodocker confirmed her information was firsthand knowledge except about the time when the Vickers returned on the ferry to Anderson Island. Tary Rodocker also testified she saw Paul Vickers on 1/28/98, Wednesday, at the store. He had on new clothes, buying cigarettes and beer, and declined repayment of a $4 debt. A common sense reading of the affidavit *71 results in the conclusion that the confidential informant's basis of knowledge was firsthand based upon what the informant had seen and heard from the Vickers brothers.[72]
Finding of fact XVII states:
The detective did not make any intentional, nor deliberate misrepresentations or omissions in the search warrant.
Petitioners assert that finding of fact IX is not supported by the record because there is no basis for determining whether the incorrect date was an intentional misrepresentation. They argue that finding of fact X is not supported by the record because the confidential informant's testimony demonstrated that much of her knowledge was from a secondhand source. Petitioners claim that finding of fact XVII is not supported by the record because of alleged inconsistencies between what was testified to at the suppression hearing and the affidavit used to support the search warrant.
"On appeal, the court reviews solely whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law. The party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence."[73] "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding."[74]
In this case, there was substantial evidence to support the trial court's findings of fact. Detective Tom Davidson testified the informant told him she saw Petitioners board a ferry leaving Anderson Island on January 24, 1998, and that he placed that correct date in his supplemental report, characterizing the transcription of the wrong date, January 25, 1999, as a typographical error.[75] This can be characterized in a classic sense as merely a "scrivener's error." That testimony supports the trial court's finding of fact IX that the incorrect date was not an intentional or deliberate misrepresentation but only an "innocent mistake."
The challenge to finding of fact X raises the issue whether the record supports the conclusion, when reading the affidavit in a common sense manner, that the informant's basis of knowledge was firsthand knowledge about information she had observed and heard from Petitioners. The record supports finding of fact X. Ms. Rodocker testified that on three occasions she heard Petitioner Paul Vickers discuss committing a robbery in a manner consistent with the manner in which the robbery and homicide were committed at The Pub on January 25, 1998, and that she saw Petitioner John Vickers gesture and make comments in agreement.[76] She said Petitioner Paul Vickers told her about a week before the January 25, 1999 robbery that he had purchased a large amount of ammunition.[77] Considering the testimony of Ms. Rodocker and reading the affidavit in a common sense manner, we conclude the record supports finding of fact X.
In challenging finding of fact XVII, Petitioners assert that the detective made intentional or deliberate misrepresentations or omissions in the affidavit for the search warrant. However, the alleged inconsistencies between the affidavit and testimony in the suppression hearing are inconsequential to the finding of probable cause for the search warrant. Petitioners have not established that Detective Davidson intentionally or recklessly misrepresented any facts necessary for establishing probable cause for the search warrant. There was substantial evidence to support finding of fact XVII.

*72 PHOTOMONTAGE

Petitioner Paul Vickers claims that admission of identification evidence by an impermissibly suggestive photomontage violated his due process rights. He argues that the photomontage was suggestive because his picture was the only driver's license photograph among the five other MUGGIS shots;[78] because the background of his photograph was lighter; and he was the only person in the photomontage not wearing coveralls.[79] This suggestiveness, he argues, made the identification unreliable when analyzed under the factors announced in Neil v. Biggers.[80]
An out-of-court photographic identification violates due process if it is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.[81] To establish a violation, Petitioner Paul Vickers bears the burden of showing that the identification procedure was impermissibly suggestive.[82] If he fails, the inquiry ends.[83] If he proves the procedure was suggestive, the court then considers, based upon the totality of the circumstances, whether the procedure created a substantial likelihood of irreparable misidentification.[84]
Petitioner Paul Vickers does not make a preliminary showing that the photomontage was impermissibly suggestive. The trial court examined the photomontage and concluded that any differences between the individual photographs were so minor as not to be impermissibly suggestive.[85] The photographs were black and white and appeared to be the same size, showing men in the same front face format.[86] All the men had facial hair (moustaches and goatees) and were approximately the same age.[87] The lighter background in Petitioner Paul Vickers' photograph does not unduly draw attention to it, nor do the photographs show enough clothing to draw attention.[88] These minor differences are not sufficient to warrant further inquiry. The Court of Appeals did not err in holding that the photomontage satisfied due process requirements.

PRIOR OUT-OF-STATE CONVICTION
Petitioner John Vickers claims application of the preponderance of the evidence standard in proving a prior out-of-state conviction to establish his persistent offender status under former RCW 9.94A. 120(4) renders his sentence unconstitutional.[89] He argues that the State was required to prove beyond a reasonable doubt that his prior conviction based on a plea of "guilty" was knowingly and voluntarily made in order to sentence him as a persistent offender under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW.[90] He contends *73 that remand for resentencing is required to cure the defect.
Petitioner John Vicker's argument, however, is without merit. The rule he refers to applies to habitual criminal proceedings.[91] It does not apply to the persistent offender statute.[92] When sentencing a defendant under the POAA, "[a]ll that is required by the constitution and the statute is a sentencing hearing where the trial judge decides by a preponderance of the evidence whether the prior convictions exist,"[93] and the "beyond a reasonable doubt standard is not required."[94] The burden of proving prior convictions by a preponderance of the evidence rests on the State.[95]
The inquiry must then be made whether the State met its burden by introducing the signed docket sheet from a Massachusetts court as evidence of Petitioner John Vickers' prior conviction.[96] The docket sheet, indicating that Petitioner pleaded "guilty" to assault and battery by a dangerous weapon, was acknowledged by signature of a Massachusetts judge and attested as a true copy by a court clerk.[97] Although a certified copy of a judgment and sentence is the best evidence of a prior conviction, the State may introduce other documents of record or transcripts of prior proceedings to establish a defendant's criminal history.[98] In this case the signed docket sheets submitted as evidence of Petitioner's prior conviction supported the fact of his conviction.

SUMMARY AND CONCLUSION
Issuance of a constitutionally valid search warrant requires a determination of probable cause based upon facts and circumstances established in an affidavit supporting the search warrant, stating sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in the criminal activity. When a search warrant is based upon information provided by a confidential informant, the affidavit under the Aguilar-Spinelli test must demonstrate the informant's (1) basis of knowledge and (2) veracity.
Petitioners concede the affidavit satisfied the veracity portion of the Aguilar-Spinelli test, but contend it did not establish the basis of knowledge test to support the warrant. The confidential informant's personal observations, however, satisfied the basis of knowledge test. The affidavit indicated the confidential informant had personal knowledge of conversations Petitioners had concerning commission of a robbery in a manner similar to the manner of the robbery and homicide committed on January 25, 1998. The informant also stated she personally observed Petitioners board a ferry bound for Steilacoom immediately accessible to Tacoma, where the robbery was committed, and that they did not return that night. The affidavit, when read in its entirety, provided a substantial basis to support the magistrate's finding of probable cause. Petitioners' allegations of an erroneous date as a material misrepresentation *74 made by the affiant refers only to a scrivener's error or an innocent mistake, and is not sufficient to require suppression of the evidence obtained under the search warrant.
Petitioners challenge the Pierce County Superior Court's written findings of facts and conclusions of law authorized by the Supreme Court Commissioner on August 6, 2002. We need to determine only whether the findings of facts are supported by substantial evidence. The record indicates there was substantial evidence to support the written findings of facts by the trial court.
Petitioner Paul Vickers has not established that the photomontage was impermissibly suggestive as creating a substantial likelihood of irreparable misidentification. Any differences between the photographs were minor and not impermissibly suggestive. The identification procedure in this case did not violate Petitioner Paul Vickers' due process rights.
The trial court correctly applied the preponderance of the evidence standard in establishing Petitioner John Vickers' prior out-of-state conviction in sentencing him as a persistent offender under former RCW 9.94A.120(4). The signed docket sheets submitted as evidence, indicating Petitioner pleaded "guilty" in a Massachusetts court to assault and battery by a dangerous weapon, satisfied the preponderance of the evidence standard in establishing the fact of his prior conviction.
We affirm the Court of Appeals.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] Report of Proceedings (RP) at 474-76, 715. Robert Williams testified that two men entered at 11:00 p.m. Ms. Theresa Dills testified the men entered between 9:00 and 10:00 p.m. Ms. Gloria Cox testified she saw two men entering sometime in the middle of her shift, 9:00-10:00 p.m.
[2] RP at 473, 711.
[3] RP at 469-76, 711-15, 896.
[4] RP at 476-77, 514, 716-17.
[5] RP at 905, 907.
[6] RP at 682, 713.
[7] RP at 478.
[8] RP at 713.
[9] RP at 723.
[10] Id.
[11] RP at 479-81.
[12] RP at 402, 426-27, 479-91.
[13] RP at 788.
[14] RP at 446, 1065-66, 1086, 1125-28.
[15] RP at 816-18.
[16] State v. Vickers, 107 Wash.App. 960, 962, 29 P.3d 752 (2001). In November 1997, Paul Vickers told Ms. Rodocker he was "broke" and he "should just go do a robbery." Later in January 1998 she noticed he was depressed because he had no money.
[17] Id. at 964, 29 P.3d 752. After January 25, 1998, Ms. Rodocker and others noticed that Petitioners Paul and John Vickers had money to pay old debts. Petitioner John Vickers' girlfriend, Ms. Rachel Krause, went with Ms. Rodocker to buy methamphetamine with $150 John Vickers gave her the morning of January 25.
[18] Id. at 964, 29 P.3d 752.
[19] Id.
[20] RP at 1312-13, 1877-78.
[21] Clerk's Paper (John Vickers) at 3.
[22] RP at 720, 748.
[23] RP at 909-11.
[24] Clerk's Papers (John Vickers) at 4-6.
[25] Clerk's Papers (John Vickers) at 4-6, 11-13.
[26] Br. of Pet'r John Vickers at 3; Br. of Pet'r Paul Vickers at 4.
[27] RP at 83.
[28] Clerk's Papers (Paul Vickers) at 10-29.
[29] RP at 171-266.
[30] RP at 265-67. The oral ruling stated in pertinent part:

We know that with regard to search warrants that that should be resolved in favor of the search warrant. And by this we give, as the case law says, great deference to the issuing judge who determines probable cause who has reason to believe that criminal activity may have occurred. Under the Aguilar-Spinelli test, the state must show the informant's basis of knowledge and, two, her credibility. The issue is as to the basis of knowledge.
That was established by the allegations that Paul, in the presence of his brother John, talked about doing a bank robbery in the same fashion as done in the Pub; that Paul had an SKS assault rifle, a shotgun, and a lot of ammunition; Paul and John were impoverished before the robbery and not afterwards; the similarity of the car; and the way they wore their bandannas allegedly into the Pub earlier that evening, including their criminal history.
The issue then becomes whether the January 25th date in the warrant was a deliberate falsehood or an innocent mistake. If it misled the judge, it could not have been a basis for probable cause, but would have exculpated the defendants and therefore, clearly, I believe, is an innocent mistake.
The issue of evidence of race, particularly as to one witness identifying the suspects as black, was left out of the warrant, but so was evidence that the suspects were Caucasian. The actual representation to the judge was that the race of suspects was unknown. I could not find that this is misleading under these circumstances.
I therefore will deny the motion to suppress the search warrant evidence.
With regard to the photo montage, the issue was the use of the defendant's driver's license photo in the montage of other MUGGIS printouts. The issue is whether or not that is so impermissibly suggestive to the witnesses as to create a substantial likelihood of irreparable mis-identification.
First, we know that only one witness picked both defendants in this photo montage line-up, Theresa Dills [sic]. And although she thought the photo in another was familiar, she had to say that the top right photo looked so like him. I would conclude that the difference in these two photos' background and the colors are so slight as to be not impermissibly suggestive. So for that reason, I will deny that motion as well.
[31] Clerk's Papers (John Vickers) at 182-90.
[32] Clerk's Papers (Paul Vickers) at 92-102.
[33] Id.
[34] Br. of Pet'r John Vickers at 1.
[35] Vickers, 107 Wash.App. at 968, 29 P.3d 752.
[36] The State submitted its responding brief on August 25, 2000.
[37] Supplemental Br. of Pet'rs at 2.
[38] See Mot. for Order Allowing Entry of Findings of Facts in the Trial Court, No. 71667-6 (Wash. Supreme Ct. July 16, 2002).
[39] Wash. Supreme Ct. Commissioner's Ruling Authorizing Trial Court to Enter Findings and Conclusions, No. 71667-6 (Aug. 2, 2002).
[40] The search warrant and complaint are not included in this opinion.
[41] Wash. Supreme Ct. Order Granting Discretionary Review, No. 71667-6, 146 Wn.2d 1001 (2002).
[42] Petitioners do not question the veracity of the confidential informant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[43] Article 1, section 7 provides greater protection of personal privacy rights than the Fourth Amendment. See, e.g., State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986); State v. Mendez, 137 Wash.2d 208, 970 P.2d 722 (1999). An analysis under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986) is not necessary on this issue.
[44] State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999) (citing State v. Smith, 93 Wash.2d 329, 352, 610 P.2d 869,) cert. denied, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93, (1980); State v. Patterson, 83 Wash.2d 49, 58, 515 P.2d 496 (1973). Search warrants are governed by Criminal Rule (CrR) 2.3 which supersedes RCW 10.79.010, .030. "A search warrant may be issued only if the court determines there is probable cause for the issuance of a warrant. There must be an affidavit [or a certificate] ... or sworn testimony establishing the grounds for issuing the warrant.... If the court finds that probable cause for the issuance of a warrant exists, it shall issue a warrant...." CrR 2.3(c).
[45] State v. Young, 123 Wash.2d 173, 195, 867 P.2d 593 (1994); State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995); State v. Seagull, 95 Wash.2d 898, 907, 632 P.2d 44 (1981).
[46] Seagull, 95 Wash.2d at 907, 632 P.2d 44.
[47] Id.
[48] Cole, 128 Wash.2d at 286, 906 P.2d 925.
[49] Id. (citing Young, 123 Wash.2d at 195, 867 P.2d 593; Seagull, 95 Wash.2d at 907, 632 P.2d 44).
[50] Br. of Pet'r John Vickers at 15.
[51] Prior convictions may be used as one factor when determining probable cause. See State v. Clark, 143 Wash.2d 731, 749, 24 P.3d 1006 (2001).
[52] State v. Cord, 103 Wash.2d 361, 365-66, 693 P.2d 81 (1985).
[53] See State v. Murray, 110 Wash.2d 706, 709, 757 P.2d 487 (1988).
[54] State v. Jackson, 102 Wash.2d 432, 440, 688 P.2d 136 (1984).
[55] Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (abandoning the "two prong test" announced in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637) and instead applying the totality of the circumstances analysis in which deficiency in one of the two factors considered in the Aguilar-Spinelli test, veracity and basis of knowledge, may be mitigated in proving probable cause by a strong showing of the other.
[56] Jackson, 102 Wash.2d at 437-40, 688 P.2d 136.
[57] Id. at 435, 688 P.2d 136.
[58] Id.
[59] Id.
[60] Id. at 438, 688 P.2d 136.
[61] State v. Wolken, 103 Wash.2d 823, 827, 700 P.2d 319 (1985).
[62] Petition for Review (Paul Vickers) at 8.
[63] Gunwall, 106 Wash.2d at 70-71, 720 P.2d 808; Wolken, 103 Wash.2d at 827, 700 P.2d 319; Jackson, 102 Wash.2d at 437-38, 688 P.2d 136.
[64] Jackson, 102 Wash.2d at 434, 444, 688 P.2d 136.
[65] Wolken, 103 Wash.2d at 827, 700 P.2d 319 (the basis of knowledge test was satisfied because the informant claimed to have personally observed marijuana and was passing on firsthand knowledge); Gunwall, 106 Wash.2d at 71, 720 P.2d 808 (although a person sold cocaine to undercover police officers, her position was analogous to an informant).
[66] Franks v. Delaware, 438 U.S. 154, 156-57, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
[67] Franks, 438 U.S. at 156-57, 98 S.Ct. 2674; State v. Garrison, 118 Wash.2d 870, 872, 827 P.2d 1388 (1992).
[68] Garrison, 118 Wash.2d at 872, 827 P.2d 1388 (quoting Franks, 438 U.S. at 171, 98 S.Ct. 2674).
[69] See Garrison, 118 Wash.2d at 873, 827 P.2d 1388.
[70] RP at 265-66.
[71] Petitioners merely argue that those findings do not establish probable cause.
[72] Findings of Fact and Conclusions of Law, State v. Vickers, Nos. 98-1-00481-1-1, 98-1-00482-9, (Pierce County Super. Ct., Aug. 30, 2002).
[73] Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 939-40, 845 P.2d 1331 (1993) (citation omitted).
[74] State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
[75] RP at 98-99.
[76] RP at 194-97.
[77] RP at 196-97.
[78] MUGGIS refers to "mug shots."
[79] The Court of Appeals noted that police officers used Petitioner Paul Vickers' license photograph because indications of a facial injury would have made him stand out. Vickers, 107 Wash.App. at 966 n. 8, 29 P.3d 752.
[80] 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
[81] State v. Linares, 98 Wash.App. 397, 401, 989 P.2d 591 (1999) (citing State v. Vaughn, 101 Wash.2d 604, 682 P.2d 878 (1984)), review denied, 140 Wn.2d 1027, 10 P.3d 406 (2000).
[82] Id.
[83] Vaughn, 101 Wash.2d at 609-10, 682 P.2d 878.
[84] Linares, 98 Wash.App. at 401, 989 P.2d 591 (citing Vaughn, 101 Wash.2d at 610-11, 682 P.2d 878).
[85] Vickers, 107 Wash.App. at 968, 29 P.3d 752; RP at 267.
[86] See Plaintiff's Exs. 13, 14, State v. Vickers, Nos. 98-1-00481-1, 98-1-00482-9 (Pierce County Super. Ct. May 11, 1999).
[87] Id.
[88] See State v. Adams, 91 Wash.2d 86, 92, 586 P.2d 1168 (1978) (finding nothing unduly suggestive about the photomontage where all the black-and-white photos showed men with small amount of facial hair and facial scars).
[89] Petitioner John Vickers does not challenge the classification of those convictions as "most serious" offenses.
[90] Former RCW 9.94A.120; 9.94A.570.
[91] See State v. Chervenell, 99 Wash.2d 309, 312, 662 P.2d 836 (1983) (in a habitual criminal proceeding the State must prove the validity of a defendant's past conviction beyond a reasonable doubt).
[92] State v. Manussier, 129 Wash.2d 652, 681-84, 921 P.2d 473 (1996).
[93] State v. Wheeler, 145 Wash.2d 116, 121, 34 P.3d 799 (2001); see State v. Lopez, 147 Wash.2d 515, 522, 55 P.3d 609 (2002) (the State must prove a defendant's criminal history by a preponderance of the evidence to sentence him as a persistent offender); State v. Ammons, 105 Wash.2d 175, 185, 713 P.2d 719 (1986), 718 P.2d 796 (1986) (the beyond a reasonable doubt standard is not required to prove a prior conviction). See also former RCW 9.94A.110 (1986); 9.94.A 500(1).
[94] Ammons, 105 Wash.2d at 185.
[95] See State v. Ford, 137 Wash.2d 472, 480, 973 P.2d 452 (1999).
[96] Id.
[97] See Plaintiff's Ex. 1, State v. Vickers, Nos. 98-1-00481-1, 98-1-00482-9 (Pierce County Super. Ct.)
[98] Ford, 137 Wash.2d at 480, 973 P.2d 452; State v. Morley, 134 Wash.2d 588, 611, 952 P.2d 167 (1998) (meeting the State's burden by introducing the entire court-martial record); State v. Aronhalt, 99 Wash.App. 302, 306, 309, 994 P.2d 248 (2000) (certified verdict forms, judgments, clerk minute entries, and court orders support existence of prior convictions).