**FILED**

**JAN 16, 2014**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31077-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK K. GIBSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J.—Patrick Gibson appeals his bench trial first-degree murder conviction for killing Brian Cole during a 1992 Spokane store robbery. In addition to evidence insufficiency, he contends the trial court erred in admitting (1) tainted in-court identifications, (2) evidence of a similar robbery the same day, and (3) deoxyribonucleic acid (DNA) evidence. Mr. Gibson in his pro se statement of additional grounds (SAG) generally asserts the trial court did not understand the evidence and suggests prosecutorial misconduct. We find no abuse of discretion in the trial court's evidence rulings, conclude the evidence sufficiently supports Mr. Gibson's conviction, and reject Mr. Gibson's SAG. Accordingly, we affirm.

FACTS

On November 7, 1992, two robberies occurred within three hours committed by a man wearing a black baseball cap that read "Solid Gold," sunglasses, and a fake beard (the disguise). The robber employed the same method of operation described below. The first occurred at 5:00 p.m. in Coeur d'Alene, Idaho. The second, the subject of this murder case, occurred around 8:00 p.m. in Spokane. The disguise, method of operation, and timing linked the two crimes but it was not until years later that DNA linked Mr. Gibson as a suspect. The court at a later bench trial learned, and generally found, the following facts.

In Coeur d'Alene, Teresa Benner was closing Kid's Fair, the store she owned with her husband, Steve Benner, when a man wearing the disguise briskly walked through the doors, displayed a small, silver handgun, and said, "'You are being robbed.'" Clerk's Papers (CP) at 319. The man ordered Ms. Benner and employee Kathy Ward, to the backroom where he found Mr. Benner and the Benners' two young children. The man ordered Ms. Ward to handcuff Mr. Benner and zip tie herself to Ms. Benner, then demanded cash, credit cards, and, unsuccessfully, personal identification number (PIN) numbers. They gave the man approximately $100 in cash. Before leaving, the man unsuccessfully tried to remove the handcuffs from Mr. Benner. When police arrived, the victims described the man and his disguise, describing the beard as "Amish-style." CP at

2

320. Police recovered a fingerprint from the handcuffs but it did not match Mr. Gibson. The robber was not then apprehended.

In Spokane, a man wearing the disguise entered Cole's Furniture and stated, "'This is a stickup.'" CP at 322. He displayed a small, silver handgun and demanded cash, credit cards, and PIN numbers. Michele Cole retrieved $18 from her purse and handed it to her husband, Brian Cole, who handed it to the robber. The robber ordered the Coles to the back of the store. Ms. Cole suffers from multiple sclerosis and drove her scooter toward the back. Mr. Cole then asked, "'You wouldn't hurt a handicapped lady, would you?'" *Id.* The robber responded, "'I might.'" *Id.* Before reaching the back of the store, Ms. Cole heard a ruckus and a gunshot. When she turned around, she saw her husband and the intruder struggling and crashing into furniture. Blood stained Mr. Cole's back. The intruder fired a second shot, hitting Mr. Cole in the head and fled. The Coles called 911. Mr. Cole died due to his injuries.

At the crime scene, police found the robber's sunglasses, the black baseball cap, and a clump of fibers from the fake beard. Ms. Cole described the robber as "clean-shaven with a fake beard and a thin face, 5'8", thin, about 30 years old." CP at 324. By chance, Heather Bender stopped her car at a well lit intersection directly in front of Cole's and saw a man wearing the disguise pass about 10 feet in front of her car and make a "beeline" toward Cole's. CP at 321. She described the man as 30-35 years old, about 5'11" and "'not heavy, not slim.'" *Id.*

3

In late 1993, the lead detective Mark Henderson showed Ms. Cole a photomontage. Ms. Cole was 85 to 90 percent certain the intruder was number four, Hugh Knuttgen. The same day, Detective Henderson showed the same photomontage to the Benners and Kathy Ward. Both Benners tentatively and separately identified number four, Mr. Knuttgen, as the robber. Kathy Ward was unable to positively identify anyone. Police later cleared Mr. Knuttgen of involvement.

Also in 1993, Detective Henderson took the black hat to Washington, D.C. The television show, "America's Most Wanted," used the hat to reenact the robbery. Three people handled the hat: Detective Henderson, producer John Walsh, and actor, Trevor St. John, each unintentionally causing DNA contamination.

In April 2004, Detective Henderson submitted the hat, along with the sunglasses found at the scene, to the Washington State Patrol Crime Lab (WSPCL). The crime lab forensic specialist James Currie analyzed the hat for DNA. Specialist Currie inconclusively found DNA from at least three people.

In 2007, Spokane County Detective Lyle Johnston assumed responsibility for the Cole murder case. In December 2010, he submitted the clump of fibers from the fake beard to the WSPCL. The lab found DNA from one individual on the clump of fibers, and ran it through the Combined DNA Index System (CODIS). CODIS reported the DNA match to Mr. Gibson. The lab concluded a one in 3.1 trillion chance existed the DNA on the clump of fake beard does not belong to Mr. Gibson. When Detective

Johnston learned the DNA on the beard belonged to Mr. Gibson, he asked the crime lab to analyze the hat collected from Cole's Furniture. The lab found Mr. Gibson potentially contributed his DNA to the hat. But, because the hat contained at least three DNA contributors, without more, one out of every two people in the United States could have contributed DNA to the hat.

Detective Johnston reviewed Mr. Gibson's file and learned he had not previously been contacted nor considered a suspect. Detective Johnston checked the National Crime Information Center (NCIC) records. The NCIC reported that the Federal Bureau of Investigation (FBI) had arrested Mr. Gibson in 1994 for bank robbery. The FBI briefed Detective Johnston on Mr. Gibson's bank robbing operation. His usual bank robbing method, according to Special Agent Frank Harrill, included wearing a hat, beard, and trench coat as a disguise.

In April 2011, Detective Johnston prepared a photomontage of six photos, including Mr. Gibson's 1994 driver's license photo. The bottom of the photomontage admonished the suspect's photograph may or may not be among those in the lineup, and specified the witness was not obligated to make an identification. Detective Johnston presented the photomontage to witnesses of both the Coeur d'Alene and Spokane robberies. From the photomontage, Ms. Cole identified Mr. Gibson as her husband's murderer. Mr. Benner identified Mr. Gibson as the man who robbed his store. Ms. Benner and Ms. Ward could not positively identify anyone. Ms. Bender was not

5

contacted. Detective Johnston did not follow the Spokane County Sheriff's office policy manual explaining the best practices for using photos to identify suspects by being involved in the investigation and not presenting the photos sequentially.

On May 4, 2011, authorities arrested Mr. Gibson who was charged with first-degree murder. At a May 17, 2012 pretrial hearing, the State sought to admit evidence from the similar Coeur d'Alene robbery, arguing the evidence was relevant as res gestae or, alternatively, under ER 404(b) exceptions for common scheme, plan, and identity. The court reserved ruling until the State presented evidence about both robberies. Then, the court admitted the Coeur d'Alene robbery evidence because it showed a common scheme, plan, and identity. And, the court stated it would admit the evidence as res gestae.

At the May 17, 2012 pretrial hearing, the State informed the court it was conducting DNA analysis on two pieces of evidence recovered from the scene of Mr. Cole's murder, two white hairs extracted from the baseball cap and fluid found on sun glasses. The crime lab, however, would not complete the testing until the 12th day of trial. The court lectured this could require a lengthy continuance, explaining, "It doesn't work that way. So either we stop this right now and reset it, or you know that we're going to go through this trial and if you don't get it in time, you're not going to get it in time . . . . I can't bifurcate a murder trial." Report of Proceedings (RP) at 90-91. After a recess, the State informed the court the DNA analysis would be ready by June 11, 2012.

6

The State and Mr. Gibson agreed to go forward, without knowing what the DNA results would show.

At a bench trial on May 29, Mr. Benner, Ms. Benner, and Ms. Cole identified Mr. Gibson, in court, as the person who robbed them in 1992. The defense unsuccessfully objected that the identifications were tainted by suggestive photo identification procedures and faulty memories.

At the end of court on May 31, 2012, the State informed the defense it had sought DNA samples from Detective Henderson, Mr. Walsh, and Mr. St. John. With those samples, the State intended to link Mr. Gibson to the hat found at Cole's Furniture. The State theorized if forensic analysts matched their DNA to the DNA found on the hat, their DNA could be excluded, allowing the crime lab to conclude with greater probability that Mr. Gibson contributed his DNA to the hat.

On June 1, 2012, the fourth day of trial, Mr. Gibson moved to suppress the additional DNA analysis results, arguing the State's analysis was untimely and prejudicial. Mr. Gibson emphasized his expert witness would not have time to retest the samples and the tests would impugn his alibi defense that he was on a fishing trip the weekend of the robberies. Further, Mr. Gibson conceded he wore the fake beard in the past, but claimed one of his bank robbing accomplices must have used the fake beard during the November 7 robberies. The court initially decided not to admit the results of the DNA comparison, unless the defense argued the hat was contaminated.

7

On June 7, 2012, the State successfully asked the court to reconsider its ruling. The court reasoned its prior ruling was based on a misunderstanding, explaining, "I looked at it purely as a contamination issue . . . . That's not the issue . . . . It's an exclusion issue and there is a huge difference." RP at 925. The issue is whether an analyst can isolate the DNA on the hat prior to contamination by excluding the "three people who purportedly touched the hat." RP at 925. Because the DNA results would be relevant and probative, the court admitted the evidence. Mr. Gibson argued "trial by surprise." RP at 895. In response, the court granted Mr. Gibson a 30-day recess and permitted him to call and recall any witness he desired to assuage any prejudice he suffered relying on the court's previous decision. After the recess, Mr. Gibson recalled witnesses and a DNA expert contesting the WSPCL's methods.

After entering extensive findings of fact and conclusions of law, the trial court found Mr. Gibson guilty as charged. He appealed.

## ANALYSIS

### A. In-Court Identification

The issue is whether the trial court erred in allowing the in-court identifications of Mr. Gibson over his impermissibly-suggestive taint objections.

We review a trial court's decision to admit evidence for an abuse of discretion. *State v. Sanchez*, 171 Wn. App. 518, 579, 288 P.3d 351 (2012) (citing *State v. Kinard*, 109 Wn. App. 428, 435, 36 P.3d 573 (2001)).

8

"An out-of-court photographic identification violates due process if it is 'so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.'" *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002) (quoting *State v. Linares*, 98 Wn. App. 397, 401, 989 P.2d 591 (1999)). If impermissible suggestiveness is established, we consider whether the challenged procedure created "'a substantial likelihood of irreparable misidentification.'" *Vickers*, 148 Wn.2d at 118 (quoting *Linares*, 98 Wn. App. at 401). If, however, Mr. Gibson fails to make that showing, our inquiry ends. *Vickers*, 148 Wn.2d at 118.

Mr. Gibson argues the photomontages were impermissibly suggestive because Detective Johnston did not follow his department's best practices when he presented the photomontages to Mr. Benner and Ms. Cole. When the investigator, Detective Johnston, presented the photomontages, he did so simultaneously, not sequentially. Mr. Gibson argues picking one out of three photos is not a fair test of a witness's ability to identify a suspect. His objections go to the weight of the evidence not its admissibility. The fact finder decides the persuasiveness of properly admitted evidence, not an appellate court. Nothing about the composition of the photomontage or the photos singles out one photo from the others. Additionally, the photomontage provided the warning the defense expert recommended that the suspect's photograph may or may not be among those in the lineup and that they were not obligated to make an identification. When they made their

9

identifications, law enforcement had not disclosed to the media that Mr. Gibson was a suspect.

Presenting the photographs simultaneously is not suggestive per se. *Sanchez*, 171 Wn. App. at 581 (citing *State v. Outing*, 298 Conn. 34, 49-50, 3 A.3d 1 (2010) (simultaneous photographic array is not unnecessarily suggestive, per se, even if not administered in a double-blind procedure); *State v. Marquez*, 291 Conn. 122, 153-56, 967 A.3d 56 (2009) (until scientific research produces more definitive answers, due process does not require suppression of photographic identification that is not the product of a double-blind sequential procedure))).

Because Mr. Gibson fails to show the procedure was impermissibly suggestive, we do not consider if the challenged procedure created "'a substantial likelihood of irreparable misidentification.'" *Vickers*, 148 Wn.2d at 118 (quoting *Linares*, 98 Wn. App. at 401).

Mr. Gibson next argues the in-court identifications were improperly suggestive. In support, he cites a Maryland case where the court explained, "[A]n in court identification of the defendant as a perpetrator is inherently suggestive." Appellant's Br. at 24 (citing *Wood v. State*, 196 Md. App. 146, 159, 7 A.3d 1115 (2010)). The Maryland court explains, "[A] one-on-one show-up is suggestive, just as 99 out of every 100 judicial or in-court identifications are suggestive. . . . A jury, however is perfectly capable of weighing the pluses and minuses of such an identification." *Wood*, 196 Md.

App. at 159. A judge is just as capable, if not more, of weighing the pluses and minuses of an in-court identification. Thus, we need not consider if the challenged procedure created "'a substantial likelihood of irreparable misidentification.'" *Vickers*, 148 Wn.2d at 118 (quoting *Linares*, 98 Wn. App. at 401). Considering all, we conclude the trial court did not abuse its discretion when allowing the in-court identifications.

### B. ER 404(b) Similar Happening Rulings

The issue is whether the trial court erred under ER 404(b) in admitting evidence of the similar Idaho robbery.

We review ER 404(b) rulings for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997); *State v. Lough*, 70 Wn. App. 302, 313, 853 P.2d 920 (1993). A court abuses its discretion when its decision is "manifestly unreasonable or based upon untenable grounds or reasons." *Stenson*, 132 Wn.2d at 701.

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before admitting ER 404(b) evidence, a trial court "'must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value

11

against the prejudicial effect.'" *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). The first requirement is uncontested.

Regarding the second requirement, the trial court admitted evidence from the Idaho robbery under ER 404(b) exceptions for common scheme and plan, identity, and under res gestae. Mr. Gibson argues evidence admitted under the common scheme and plan exception may not be used to show identity. It is unclear whether the trial court distinguished the exception for a common scheme or plan from the identity exception. The Washington State Supreme Court does distinguish between the exceptions. *See Foxhoven*, 161 Wn.2d at 179 (court permits evidence of prior misconduct for the purpose of identity, but not under the common scheme or plan exception); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 404.22, at 552-53 (5th ed. 2007). Because of this lack of clarity we turn first to identity, and then analyze res gestae.

Under the identity exception, Mr. Gibson solely disputes "whether the evidence is relevant and necessary to prove an essential element of the crime." Appellant's Br. at 25; *Foxhoven*, 161 Wn.2d at 175. To be relevant, evidence must tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401; *see also Foxhoven*, 161 Wn.2d at 176. Mr. Gibson argues the

evidence was irrelevant because the court admitted evidence of an uncharged crime, by an unknown assailant, whose description did not match his.

Again, his objections go purely to the weight given the evidence, not its admissibility. The court made substantial findings of fact detailing the similarities between the crimes. Mr. Gibson challenges the court's ultimate conclusion, but he does not challenge the findings of fact the court relied on to reach that conclusion. Those findings are verities on appeal. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010) (citing *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002)). At trial Mr. Gibson asserted an alibi defense, claiming he was fishing in the Puget Sound on November 7, 1992. The court found the evidence from the Kid's Fair robbery relevant because it contradicted Mr. Gibson's alibi, and proved an essential element of the crime: his identity. The court concluded the same man robbed both stores. The evidence from the Kid's Fair robbery increases the probability that Mr. Gibson robbed Cole's Furniture and murdered Mr. Cole, thus establishing the relevance of the Kid's Fair evidence. *Foxhoven*, 161 Wn.2d at 176.

Mr. Gibson argues, even if the evidence is relevant, it is unfairly prejudicial, but he does not explain how the evidence is unfairly prejudicial. The trial court found the evidence was highly probative and outweighed any prejudice. The court reasoned that it directly contradicted Mr. Gibson's alibi. We weigh the high probative value of this evidence against the prejudice to Mr. Gibson. ER 403; *State v. Tharp*, 96 Wn.2d 591,

13

594, 637 P.2d 961 (1981). The purpose of ER 403 is to prohibit introducing evidence of a defendant's past crime that may unfairly inflame the passions of the jurors. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950). Here, no jury is involved because Mr. Gibson requested a bench trial. Considering, his direct testimony detailing his long criminal history, including forgeries, burglaries, rape, robberies, stealing cars, and numerous bank robberies, it is difficult to follow Mr. Gibson's reasoning singling out this one additional event or find any prejudice. Even if the trial court had erred in considering the evidence under the ER 404(b) identity exception, the error would be harmless because, as next discussed, the trial court properly admitted the evidence under a theory of res gestae. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

Res gestae permits a trial court to admit misconduct that would otherwise be inadmissible when that misconduct is connected in time, place, circumstances, or means employed and constitutes proof of the history of the crime charged. *State v. Lillard*, 112 Wn. App. 422, 432, 93 P.3d 969 (2004) (under res gestae, evidence of other crimes or bad acts are admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime). Mr. Gibson argues the story of the Cole's Furniture robbery and murder was complete without the Benners' testimony, but it tended to rebut his alibi. Under res gestae, evidence may be admissible if it is relevant to rebut a material assertion by the defendant. *See State v. Thompson*, 47 Wn. App. 1, 733 P.2d 584 (1987) (evidence admissible to contradict the defendant's

14

claim of self-defense); 5 TEGLAND, *supra* § 404.18, at 528. The Benners' testimony identifying Mr. Gibson as the man who robbed their store that weekend rebuts his claimed alibi. Given all, we conclude, under res gestae the trial court did not abuse its discretion in admitting the Kid's Fair evidence. *Thompson*, 47 Wn. App. 1.

## C. DNA Evidence

The issue is whether the trial court erred in admitting the late developed DNA evidence in Mr. Gibson's trial. Citing *Hutchinson*, Mr. Gibson contends admitting the DNA violated discovery rules. 135 Wn.2d at 883. But we reason the State did not violate discovery rules. CrR 4.7(a)(1)(iv) provides, in part,

> [T]he prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's *possession or control* no later than the omnibus hearing: . . . any reports or statements of experts . . . including results of physical or mental examinations and scientific tests, experiments, or comparisons.

The State possessed the hat, DNA results from the hat, and knew Detective Henderson, Mr. Walsh, and Mr. St. John handled the hat. The State timely disclosed this information to Mr. Gibson. What the State did not disclose until after the omnibus hearing, is the DNA test comparing the DNA on the hat with that of those three. But the State did not possess the DNA results until June 7, 2012, after the omnibus hearing. Thus, it did not violate CrR 4.7(a)(1).

Under CrR 4.7(h)(2) a party that "discovers additional material or information which is subject to disclosure . . . shall promptly notify the other party." The State

disclosed that it was seeking the DNA from the three on May 31, 2012, before it had the

results. Under CrR 4.7(h)(2), the State properly disclosed the evidence. Therefore,

*Hutchinson* does not help Mr. Gibson. 135 Wn.2d at 883. Whether the trial court

properly admitted the DNA comparison is an evidentiary ruling we review for an abuse

of discretion. *State v. Ellis*, 126 Wn.2d 498, 504, 963 P.2d 843 (1998). A court abuses

its discretion when its decision is "manifestly unreasonable or based upon untenable

grounds or reasons." *Stenson*, 132 Wn.2d at 701.

Continuance, not suppression, is one proper remedy when the State fails to give

notice prior to trial of its intent to introduce newly discovered evidence. *State v. Hughes*,

56 Wn. App. 172, 783 P.2d 99 (1989). "Violations of that nature are appropriately

remedied by continuing trial to give the nonviolating party time to interview a new

witness or prepare to address new evidence." *Hutchinson*, 135 Wn.2d at 881. The trial

court gave Mr. Gibson a 30-day continuance and leave to call and recall witnesses. The

trial court acted within its discretion. *See, e.g.*, *Linden*, 89 Wn. App. at 947 (holding trial

court acted within its discretion when granting continuance to defense for prosecution's

late disclosure of information).

### D. Evidence Sufficiency

When a defendant challenges the sufficiency of the evidence underlying his

conviction, a reviewing court views the evidence in the light most favorable to the State

and asks whether any rational trier of fact could find the essential elements of the crime

beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

To convict Mr. Gibson of first-degree murder, the State had to prove beyond a reasonable doubt he committed an armed robbery, and in the course of the robbery he caused the death of another. RCW 9A.32.030(1)(c). Mr. Gibson does not contest the Idaho and Spokane robbery events, but he denies his involvement. We reason substantial evidence supports the trial court's findings.

At trial, the Benners testified a man wearing the disguise robbed their store, Kid's Fair. The man displayed a small, silver handgun and demanded cash, credit cards, and PIN numbers. Ms. Cole testified that three hours after Kid's Fair was robbed, a man wearing the same disguise robbed her store. CP at 322. The man displayed a small, silver handgun and demanded cash, credit cards, and PIN numbers. Ms. Bender testified she saw a man outside of Cole's Furniture around 8:00 the night of the robbery wearing the same disguise. From this evidence a rational trier of fact could conclude beyond a reasonable doubt that the same man robbed both Kid's Fair and Cole's Furniture.

DNA evidence on a piece of the fake beard recovered at Cole's Furniture matched Mr. Gibson's DNA. Based on the analysis of the WSPCL, a one in 3.1 trillion chance exists the DNA on the clump of fake beard does not belong to Mr. Gibson. In addition, after the WSPCL excluded the DNA of the three other contributors, the lab concluded the DNA on the hat matched Mr. Gibson by an exclusion factor of one in 10 million.

17

Given all, substantial evidence sufficiently supports Mr. Gibson's conviction.

### D. SAG

Mr. Gibson disagrees with the trial court's findings of fact and claims the court misunderstood the evidence or fabricated certain findings. But credibility determinations are left to the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). In sum, the court found the State's witnesses credible and not Mr. Gibson's witnesses.

Next, Mr. Gibson believes the prosecutor lied to the court about the DNA on the hat, conspired with witnesses to evoke perjury, and that transcripts have been edited to remove incriminating remarks. He offers no evidence to support his speculation. The court reporter's declaration contradicts his assertion that the transcripts have been edited. Nothing in the record suggests the prosecutor lied to the court.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Kulik, J.

Fearing, J.

18