[No. 41416-3-II.   Division Two.   June 19, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. BENJAMIN RIVAS, JR., *Appellant*.

884

*Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Jonathan L. Meyer*, *Prosecuting Attorney*, and *Debra Eurich*, *Deputy*, for respondent.

¶1 WORSWICK, C.J. — Benjamin Rivas appeals his second degree assault[1] and second degree malicious mischief[2] convictions, arguing that (1) the State's charging document was both legally and factually deficient and (2) the trial court's malicious mischief jury instruction relieved the State of its burden of proving every essential element of the crime. We agree the charging document was deficient and we reverse Rivas's malicious mischief conviction, but we affirm his second degree assault conviction.

## FACTS

¶2 Rivas believed that someone driving a green Honda broke all of the windows out of his father's van. Rivas responded by searching for green Hondas and, when he found one, he retaliated by breaking its windows. Rivas used a crowbar to break two windows out of a green Honda Accord and one window out of a Ford pickup truck.

¶3 Both the Honda and the Ford belong to the same person and were parked outside their owner's home in a residential Chehalis neighborhood. The vehicles' owner paid $757.58 out-of-pocket to repair the three broken windows.

---

[1] RCW 9A.36.021(1)(c).

[2] RCW 9A.48.080(1)(a).

¶4 After breaking the three car windows, Rivas fled. While running away from the vandalized cars, Rivas and two of his friends ran past Cassidy Bailey's home. Bailey opened his front door, saw three men running away, and pursued them. The three men surrounded Bailey and Rivas raised a crowbar, swinging it at Bailey's head five or six times. In avoiding the crowbar, Bailey fell down onto his back and Rivas started to swing the crowbar at his head. As Rivas started to swing at Bailey's head, Bailey's fiancée cocked a shotgun and yelled at Rivas and the other two men to get back. Rivas and his friends ran away without having hit Bailey with the crowbar.

¶5 Officer Christie Fitzgerald responded to a disturbance call and detained Rivas. She noticed that he was struggling for breath and was bleeding from cuts on his hands, and she requested medical aid. After medical responders cleared Rivas for questioning, officers arrested Rivas and informed him of his *Miranda*[3] rights. Rivas told the officers that he injured his hands while breaking car windows with a crowbar, and he took the officers to the parked cars.

¶6 The State charged Rivas with second degree malicious mischief by information, alleging that he "knowingly and maliciously cause[d] physical damage to the property of another in an amount exceeding seven hundred and fifty dollars ($750)." Clerk's Papers (CP) at 3. Several weeks before the State filed its amended information, it filed an affidavit of probable cause. In this affidavit, the deputy prosecuting attorney averred that Rivas told the officers that he broke windows out of two vehicles in the area and that after seeing the damage, officers estimated the damage exceeded $750. Rivas did not challenge the sufficiency of the information below.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶7 At trial, Rivas's counsel attempted to elicit testimony from a police officer that he had heard a 911 dispatcher state that she heard a man shout, "Shoot the son of a bitch." Report of Proceedings (Oct. 18, 2010) at 94. The trial court excluded that testimony on hearsay grounds. Rivas's counsel did not attempt to call the 911 dispatcher as a witness. But Rivas testified that he fled from Bailey after Bailey yelled for his fiancée to "[s]hoot the son of a bitch."

¶8 The trial court instructed the jury that to convict Rivas of second degree malicious mischief, the State had to prove the following elements beyond a reasonable doubt:

(1) That on or about and between August 4, 2010 and August 5, 2010, [Rivas] caused physical damage to the property of another in an amount exceeding $750;

(2) That the defendant acted knowingly and maliciously; and

(3) That this act occurred in the State of Washington.

CP at 46. Rivas's counsel neither proposed jury instructions nor objected to the court's jury instructions.

¶9 The jury found Rivas guilty of second degree malicious mischief and second degree assault with a deadly weapon sentence enhancement.[4] Rivas appeals.

## ANALYSIS

### I. INFORMATION

¶10 Rivas first argues that the information charging second degree malicious mischief violated his constitutional right to notice because it (1) failed to allege a common scheme or plan, thus omitting an essential element of the crime, and (2) omitted the specific facts underlying the State's allegation. The State argues that there was no common scheme or plan because Rivas damaged one person's property, on one night, at one time. We agree with

---

[4] RCW 9.94A.825.

Rivas that a common scheme or plan is an essential element under the facts of this case.

## A. *Standard of Review*

¶11 Rivas has a constitutional right to be informed of the nature and cause alleged against him in the charging document. *State v. McCarty*, 140 Wn.2d 420, 424-25, 998 P.2d 296 (2000). We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).

## B. *Legally Insufficient Information*

¶12 To be legally sufficient, an information or other charging document must state each essential element of an alleged crime, including all statutory and nonstatutory elements. *State v. Courneya*, 132 Wn. App. 347, 350, 131 P.3d 343 (2006). Where an information fails to include an essential element of the alleged crime, it fails to charge a crime. *Courneya*, 132 Wn. App. at 351. Further, an information must also allege facts supporting each element of the crime charged. *Courneya*, 132 Wn. App. at 350. These legal and factual requirements are designed to give the defendant adequate notice of the charges so that he or she may prepare a defense. *Courneya*, 132 Wn. App. at 351.

¶13 Where a defendant challenges the sufficiency of an information for the first time on appeal, we construe that charging document liberally in favor of validity. *Williams*, 162 Wn.2d at 185. In analyzing the sufficiency of an information under this liberal construction, we employ a two-prong test: (1) do the necessary elements appear in any form, or by fair construction can they be found in the information and, if so, (2) can the defendant show he or she was actually prejudiced by the vague or unartful language. *State v. Zillyette*, 173 Wn.2d 784, 786, 270 P.3d 589 (2012). Under the first prong, we consider the charging document

alone, reading it as a whole, construing it " 'according to common sense,' " and including facts that are necessarily implied by the document's language. *State v. Goodman*, 150 Wn.2d 774, 788, 83 P.3d 410 (2004) (emphasis omitted) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 109, 812 P.2d 86 (1991)). In order to satisfy the first prong, the charging document must include some language notifying the defendant of any missing essential element. *Courneya*, 132 Wn. App. at 351.

¶14 Thus, under this first prong of our analysis, where we can neither find nor fairly imply an essential element of the crime in the charging document, we presume prejudice and reverse without considering whether the omission prejudiced the defendant. *Goodman*, 150 Wn.2d at 788. In such cases, we reverse the conviction even if the defendant had actual knowledge of all the essential elements of the alleged crime. *Kjorsvik*, 117 Wn.2d at 101-02; *McCarty*, 140 Wn.2d at 425. But if the necessary facts do appear in some form in the charging document, we continue our analysis and determine whether the defendant can " 'show that he or she was nonetheless actually prejudiced by the inartful language [that] caused a lack of notice.' " *Williams*, 162 Wn.2d at 185 (quoting *Kjorsvik*, 117 Wn.2d at 105-06).

¶15 Accordingly, our analysis requires us to determine whether all the essential elements for second degree malicious mischief appear in any form, including by fair construction, in Rivas's information. Second degree malicious mischief is a felony that a person commits by "knowingly and maliciously . . . caus[ing] physical damage to the property of another in an amount exceeding [$750] . . . ." RCW 9A.48.080(1)(a), (2). Under narrow, statutorily defined circumstances, the State may aggregate the value of damage to multiple items of property to charge a defendant with second degree malicious mischief. RCW 9A.48.100(2). Specifically,

> If more than one *item* of property is physically damaged *as a result of a common scheme or plan* by a person and the physical

damage to the property would, when considered separately, constitute mischief in the third degree because of value, then the value of the damages may be aggregated in one count. If the sum of the value of all the physical damages exceeds [$750], the defendant may be charged with and convicted of malicious mischief in the second degree.

RCW 9A.48.100(2) (emphasis added); RCW 9A.48.080(1). Thus, the plain statutory language compels the conclusion that a common scheme or plan is an essential element of second degree malicious mischief where the State aggregates the value of damages to more than one *item* of property to reach the $750 threshold. RCW 9A.48.080(1), .100(2).

¶16 A defendant acts pursuant to a common scheme or plan when he or she (1) commits several crimes, each of which constitutes a part of his or her larger plan or (2) he or she develops a plan and carries it out multiple times to achieve distinct, but substantively similar, crimes. *State v. Gresham*, 173 Wn.2d 405, 421-22, 269 P.3d 207 (2012) (holding that evidence of a defendant's prior bad act is admissible to show he or she acted with a common scheme or plan under ER 404(b)). When a defendant acts under a common scheme or plan, the State may aggregate multiple distinct acts to meet the threshold to charge a more serious degree. *State v. Atterton*, 81 Wn. App. 470, 472-73, 915 P.2d 535 (1996). Similarly, the State may aggregate multiple distinct acts committed by the defendant as part of his or her common scheme or plan even if the defendant committed those distinct acts on the *same day*. *State v. Scherer*, 77 Wn.2d 345, 354, 462 P.2d 549 (1969) (Hunter, C.J., concurring).

¶17 Here, the State acknowledges that it did not allege a common scheme or plan in its information; instead, it charged Rivas with "knowingly and maliciously caus[ing] physical damage to the property of another . . ." in the amount of $757.58. CP at 3. The language in this information mirrors the statutory language required to charge a

person with second degree malicious mischief based on the value of damage to a *single item* of property. *See* RCW 9A.48.080(1). But Rivas damaged *two items* of property: a Honda and a Ford. The State is incorrect in its argument that Rivas committed only one count of second degree malicious mischief because *one person* owned *both items* of property. RCW 9A.48.100(2); *see Atterton*, 81 Wn. App. at 472-73.

¶18 Although the total damage Rivas caused exceeded $750, the Honda's damage totaled only $502.66 and the Ford's damage totaled only $254.92. Thus, the State had to aggregate the value of the damage to the Honda and the Ford to reach the $750 threshold required for it to charge Rivas with second degree malicious mischief, a felony, instead of two counts of third degree malicious mischief, a misdemeanor. RCW 9A.48.080(1), .100(2), .090(1). Because the State charged Rivas with second degree malicious mischief based on the aggregate value of the damage to two *items* of property, the Honda and the Ford, the State was required to allege Rivas damaged those two items of property pursuant to a common scheme or plan. RCW 9A.48-.100(2). Accordingly, a common scheme or plan is an essential element of second degree malicious mischief when the State aggregates the value of damaged items of property in order to reach the statutory damage threshold. RCW 9A.48.100(2).

¶19 The State concedes that it failed to allege that Rivas damaged the Honda and the Ford as part of a common scheme or plan. Although we liberally construe the information in favor of its validity, we conclude that the information is deficient. The information omits the essential element of a common scheme or plan for second degree malicious mischief based on the aggregated value of damages to multiple items of property as charged. *Kjorsvik*, 117 Wn.2d at 105-06. Consequently, we assume the State's failure to allege a common scheme or plan prejudiced Rivas and we are compelled to reverse his conviction without

considering whether this omission prejudiced Rivas.[5] *Goodman*, 150 Wn.2d at 788. Nonetheless, the State may elect to recharge Rivas with an amended information and retry him because reversals of convictions based on an insufficient charging document are without prejudice. *City of Auburn v. Brooke*, 119 Wn.2d 623, 639, 836 P.2d 212 (1992); *State v. Brown*, 169 Wn.2d 195, 198, 234 P.3d 212 (2010).

## II. MALICIOUS MISCHIEF JURY INSTRUCTION

¶20 Because the issue is likely to recur if the State refiles the charges, we address Rivas's argument that the trial court's malicious mischief "to convict" instruction violated his due process rights because it relieved the State of its burden of proving the essential element of common scheme or plan. We agree.

¶21 We review a challenged "to convict" instruction de novo, in the context of the jury instructions as a whole. *Williams*, 162 Wn.2d at 182. Because failure to include an element in a "to convict" instruction is of constitutional magnitude, a defendant may challenge it for the first time on appeal. *State v. Sloan*, 149 Wn. App. 736, 742, 205 P.3d 172 (2009); *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

¶22 Due process requires the trial court to accurately instruct the jury on every element required to convict a defendant of the crimes alleged and on the State's burden of proving every element of the crimes alleged beyond a reasonable doubt. *State v. Chambers*, 157 Wn. App. 465, 474-75, 237 P.3d 352 (2010), *review denied*, 170 Wn.2d 1031 (2011). Moreover, because the purpose of jury instructions is to instruct the jury on the applicable law, they "must necessarily contain more complete and precise statements of the law than are required in an information" or charging

---

[5] Because we conclude that Rivas's information was legally insufficient, we do not consider whether it was factually sufficient.

document. *State v. Borrero*, 97 Wn. App. 101, 107, 982 P.2d 1187 (1999).

¶23 The trial court gave a "to convict" jury instruction that mirrors the language of our second degree malicious mischief pattern jury instruction. CP at 46. The three elements required to convict a person of second degree malicious mischief, as set forth in our pattern jury instruction, are:

(1) That on or about [the date of the crime], the defendant

(a) caused physical damage to the property of another in an amount exceeding [$750] . . . ;

. . . .

and

(2) That the defendant acted knowingly and maliciously; and

(3) That this act occurred in the State of Washington.

11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 85.06, at 69 (3d ed. Supp. 2011) (second alteration in original) (WPIC); *see* RCW 9A.48.080(1).

¶24 However, when the State aggregates the damage to more than one item of property in order to charge second degree malicious mischief under RCW 9A.48.100(2), it must "[i]nclude the existence of a common scheme or plan as one of the elements in the elements instruction." *See* 11A WPIC 85.12 note on use at 232. As analyzed above, the existence of Rivas's common scheme or plan to damage more than one item of property was an essential element of second degree malicious mischief as charged. *See* RCW 9A.48.100(2); *see also* Part II, *supra*. Thus, the trial court erred when it gave

the jury a "to convict" instruction that omitted an essential element of the crime charged.[6,7]

¶25 We affirm Rivas's conviction for second degree assault. We reverse his conviction for second degree malicious mischief and dismiss without prejudice.

ARMSTRONG and VAN DEREN JJ., concur.

Review denied at 176 Wn.2d 1007 (2013).

---

[6] Because we reverse Rivas's malicious mischief conviction on other grounds, we do not address whether this error was harmless.

[7] Rivas further argues that his counsel provided ineffective assistance. We do not reach this argument because we reverse Rivas's malicious mischief conviction on other grounds, as discussed above.