# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50293-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ANTHONY GARAY, | |
| Appellant. | |

BJORGEN, J.P.T.[1] — Anthony Garay appeals from convictions of one count of third degree theft, one count of residential burglary, one count of second degree burglary, and two counts of first degree trafficking in stolen property.

He argues that (1) the State presented insufficient evidence of theft, residential burglary, and second degree burglary, (2) the convictions for first degree trafficking in stolen property and third degree theft are barred by double jeopardy, (3) the information was deficient because it failed to allege specific facts regarding third degree theft and first degree trafficking in stolen property, and (4) the trial court improperly calculated his offender score because the State failed to prove his prior convictions.  Garay also contends that imposition of the criminal filing fee and DNA (deoxyribonucleic acid) fee on him conflicts with *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), and Laws of 2018, chapter 269.

---

[1] Judge Thomas R. Bjorgen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

We affirm Garay's convictions for residential burglary and first degree trafficking in stolen property, reverse his convictions for third degree theft and second degree burglary, and remand for resentencing consistent with this opinion.

FACTS

After going to bed on May 7, 2014, sometime between 10:30 p.m. and 11:00 p.m., Jeri Dalgleish woke up the next morning between 6:00 a.m. and 6:30 a.m. to discover that her house had been burglarized. The missing items included her laptop computer, several video games, a Nook e-reader, backpacks, a blanket with the Eiffel Tower printed on it, and three limited edition commemorative Seattle Seahawk bottles of Maker's Mark bourbon.

Around 3:00 a.m. that same morning, a Craigslist advertisement for three commemorative Seahawks bottles of Maker's Mark was posted using Garay's phone number and listing "Anthony" as the contact person. Verbatim Report of Proceedings (VRP) (Vol. II) at 294-98. A few days later, Garay sold the Seahawks bottles to a pawnshop and signed a receipt declaring that he was the sole owner of the items and was selling them "free of any indebtedness or claim of any kind." VRP (Vol. III) at 401-05.

On June 11, Jason Gilliam noticed that his children's bicycles were out of place inside his garage. A few days later, he learned that his children were not responsible for their bikes being out of place. Gilliam returned to the garage to discover that he was missing several Dewalt power tools. On June 14, Garay pawned those tools at the same pawnshop where he had sold the Seahawk bottles, leaving a signed receipt warranting that the property was not stolen and that he had the right to sell the property. On June 15, Gilliam called the police to report his missing tools. Gilliam did not know exactly when the burglary took place.

Garay lived within three blocks of both Dalgleish and Gilliam, but there was no evidence of his whereabouts on the dates of the burglaries. There was no fingerprint or forensic evidence, surveillance footage, or eyewitness testimony that Garay was in the area when the burglaries occurred.

On June 25, police executed a search warrant for Garay's home, where he claimed to live alone. There they found one of Dalgleish's backpacks and a blanket, but none of the other missing items. When questioned, Garay stated that he had not pawned anything recently and claimed that he owned the blanket, but could not remember where, from whom, or for how much he had bought it. The blanket and backpack, along with all the stolen items found at the pawnshop, were returned to Dalgleish and Gilliam. The pawnshop never recovered the money it paid Garay for those items.

The police arrested Garay, and he was charged with residential burglary, two counts of first degree trafficking in stolen property, second degree burglary, third degree theft, and bail jumping. Rather than charge Garay with third degree theft from Dalgleish's home or Gilliam's garage, the State alleged he had committed theft from the pawnshop on the basis that he sold stolen items to the pawnshop and the owner never recouped the money it paid him. The State also charged Garay with residential burglary for items taken from Dalgleish's home and second degree burglary for items taken from Gilliam's garage. Although the State initially charged Garay with two counts of first degree trafficking in stolen property and specified the items relating to the charges, ("commemorative bottles," "tools," etc.), the State later amended the charges without specifying which items he trafficked. Clerk's Papers (CP) at 12-13. Garay never requested a bill of particulars with regard to any charges in the amended information.

Garay's first trial ended in a mistrial. Garay was tried a second time on the same charges, and the jury found him guilty of all charges.

In addition to this case, Garay separately pled guilty to one count of eluding in another case pending sentencing. The trial court sentenced Garay on both cases at the same hearing. The court set the sentence in the other case to run concurrently with the sentence in the present appeal, and Garay agreed with the State's offender score calculation in the other case. The two cases have the same criminal history, but the case that went to trial in this matter involved multipliers due to the burglary convictions.

During sentencing, the State argued that Garay's offender score was 11 for the burglary charges and 9 for the other charges, due to alleged prior convictions. As evidence of criminal history, the State provided only a signed prosecutor's statement listing the prior convictions, along with their dates and case numbers. Garay agreed that the State's scores were correct, but noted that the corresponding criminal history information had not been updated. The only offender scoring form entered into the record was that of the trial judge. Garay did not object to his offender score of 11 for the residential burglary conviction and 9 for the other felonies and signed the judgment and sentence with those scores and sentencing ranges. The trial court ultimately sentenced Garay to 74 months on the residential burglary conviction, 74 months for each count of first degree trafficking in stolen property, 51 months for second degree burglary, 364 days for third degree theft, and 60 months for bail jumping. The court ordered all his sentences to run concurrently, for a total period of confinement of 74 months.

In addition to other matters, the sentencing court imposed the criminal filing fee and DNA collection fee on Garay. The court also found Garay indigent at the end of trial.

Garay appeals.

4

ANALYSIS

I. SUFFICIENT EVIDENCE

Garay argues that the State presented insufficient evidence of third degree theft, residential burglary, and second degree burglary. We agree with Garay and hold that the State presented insufficient evidence to support convictions for third degree theft and second degree burglary. However, we hold the State did present sufficient evidence to support Garay's conviction for residential burglary.

A.     Legal Principles and Standard of Review

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id*. Circumstantial evidence and direct evidence carry equal weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

B.     Theft Conviction

The State charged Garay with third degree theft for selling stolen items to the pawnshop. The State's theory is that Garay stole from the pawnshop by taking its money in exchange for stolen items that he sold without the owners' permission while representing that he was the owner, and the pawnshop was unable to recoup that money when law enforcement later seized those items. Garay argues that insufficient evidence supports his conviction of third degree theft because the State did not present evidence that he intended to deprive the pawnshop of property.

"Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). "A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed seven hundred fifty dollars in value." RCW 9A.56.050(1). "Intent to deprive" does not require intent to "permanently" deprive. *State v. Komok*, 113 Wn.2d 810, 816-17, 783 P.2d 1061 (1989).

We agree with Garay that the State failed to demonstrate that he had the requisite intent to deprive the pawnshop of its money. Although the State may have proved that Garay wrongfully obtained control of the pawnshop's money by selling it stolen property while representing he was the owner, it did not present any evidence of Garay's mental state in selling those items. "Intent to deprive" is an essential element of the offense of theft, yet there was no evidence that Garay knew, much less intended, that those items would be seized by law enforcement and the pawnshop would be unable to resell them and recoup its payment to Garay. Circumstantial evidence carries the same weight as direct evidence, but it is not clear that there was even circumstantial evidence of Garay's intent. *See Delmarter*, 94 Wn.2d at 638.

The State also argues that by trafficking in stolen property, a crime for which he was separately convicted, Garay committed theft from the pawnshop. However, the record still lacks sufficient evidence of Garay's intent to deprive the pawnshop of property in relation to the theft charge.

We hold there is insufficient evidence to support Garay's conviction for theft.

C. Burglary Convictions

Garay argues that the State presented no evidence that he had ever been inside Gilliam's garage, so there was insufficient evidence to support his second degree burglary conviction.

6

Garay likewise argues that insufficient evidence supports his residential burglary conviction because the State did not present any evidence that he had ever been inside Dalgleish's home. Rather, Garay argues the State's evidence merely shows that he possessed some of the stolen property soon after the burglaries and that he lived nearby. We agree that the State presented insufficient evidence to support Garay's conviction for second degree burglary, but conclude the State presented sufficient evidence to support his conviction for residential burglary.

To convict Garay of second degree burglary regarding Gilliam, the State must prove beyond a reasonable doubt that he entered or remained unlawfully in a building with the intent to commit a crime against a person or property therein. RCW 9A.52.030(1). To convict Garay of residential burglary regarding Dalgleish, the State must prove beyond a reasonable doubt that he entered or remained unlawfully in a dwelling with the intent to commit a crime against a person or property therein. RCW 9A.52.025.

"In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein." RCW 9A.52.040. "[P]roof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary." *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982). To support a burglary conviction, the State must also show at least slight corroborative evidence of other inculpatory circumstances. *Id*. Such inculpatory circumstances include the presence of the accused near the scene of the crime, flight, improbable or inconsistent explanations, possession of a forged bill of sale, the giving of fictitious names, or circumstantial proof of entry. *Id*.; *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946).

Garay contends that there is insufficient evidence to support his convictions for second degree burglary and residential burglary because the State presented no evidence that he had ever been inside Gilliam's garage or Delgleish's home. Garay asserts the State's evidence merely shows that he possessed some of the stolen property soon after the burglaries and that he lived nearby.

1. Second Degree Burglary

With respect to the second degree burglary conviction, we agree with Garay. The State demonstrated that Garay was in possession of Gilliam's power tools when he sold them to the pawnshop, but that sale occurred several days after the presumptive date of the burglary (the day Gilliam discovered the bicycles had been moved around in the garage). In fact, Gilliam did not know when exactly the burglary took place, so it is impossible to determine whether Garay was anywhere near the scene of the crime at the time it was committed. The State presented no evidence that Garay was ever physically near the scene of the crime, let alone in Gilliam's garage, other than simply that he lived a few blocks away.

The only remotely corroborative evidence is the fact that Garay denied having pawned anything recently when questioned by police, despite having signed a receipt claiming good title to the tools when he sold them at the pawnshop. But all this evidence corroborates is the fact that Garay sold stolen property to the pawnshop, which is not in dispute.

The State analogizes this case to *Portee*. In that case, there was sufficient evidence for a conviction where the defendant (1) pawned the stolen property as his own the same afternoon as the burglary, (2) gave a fictitious name and address, and (3) provided an explanation for his possession of the stolen property that a jury could reasonably have regarded as improbable. *Portee*, 25 Wn.2d at 254. Here, unlike in *Portee*, Garay (1) pawned the stolen property at least

several days after the burglary, (2) truthfully provided his full name and address at the pawnshop, and (3) stated only that he had not pawned anything recently, but did not provide any improbable explanations for his possession of the tools.

Garay's denial of having pawned anything recently, on its own, does not constitute sufficient corroborative evidence. The mere fact that Garay was in possession of the power tools, without other evidence of his presence near the crime scene or other inculpatory circumstances, is insufficient to support a conclusion that he actually entered Gilliam's garage, a necessary element for a burglary conviction. *See Mace*, 97 Wn.2d at 845.

We hold that the State presented insufficient evidence to support Garay's conviction for second degree burglary.

2. Residential Burglary

Turning to Garay's residential burglary conviction, the State has marshaled more substantial evidence of inculpatory circumstances. Although there is no evidence that Garay was physically present near Dalgleish's house, his Craigslist post suggested that he was in possession of the Seahawk bottles mere hours after the burglary took place. This, combined with the proximity of his residence to Dalgleish's house, could support the inference that he was near the scene of the crime and in possession of the stolen property soon after the residential burglary.

Furthermore, when questioned by police as to why he was in possession of Dalgleish's blanket, Garay gave the improbable explanation that he owned it but could not remember where, from whom, or for how much he had bought it. Taken together with proof of his possession of the stolen property, in the light most favorable to the State, this evidence of inculpatory circumstances is sufficient for a rational juror to find the elements of residential burglary beyond a reasonable doubt.

We hold the State presented sufficient evidence to support Garay's conviction for residential burglary.

## II. DOUBLE JEOPARDY

Garay argues that the trial court violated his right to be free from double jeopardy by entering convictions for both trafficking in stolen property and theft. Because we reverse his theft conviction, we need not reach this claim.

## III. THE INFORMATION

Garay argues that the information is constitutionally deficient in its charges of first degree trafficking and third degree theft. Because we reverse and vacate his third degree theft conviction, we do not consider the adequacy of the information with respect to that charge. With respect to the trafficking charge, we hold that it was not deficient.

A.      Legal Principles and Standard of Review

We review a challenge to the sufficiency of an information de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007); *State v. Rivas*, 168 Wn. App. 882, 887, 278 P.3d 686 (2012). An information must allege essential statutory and non-statutory elements of a crime, providing the defendant with sufficient notice of "'the nature and cause of the accusation against him.'" *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22). To satisfy this requirement, the information must allege (1) "every element of the charged offense" and (2) "particular facts supporting them." *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010). In other words, the information must "*allege facts supporting every element of the offense*, in addition to adequately identifying the crime charged." *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989). "These legal and factual requirements are designed to give the

10

defendant adequate notice of the charges so that he or she may prepare a defense." *Rivas*, 168 Wn. App. at 887.

While the information must include the "essential elements" of the crime charged, it is not required to allege "specific facts" beyond those required to support each element of the crime. *State v. Laramie*, 141 Wn. App. 332, 338, 340, 169 P.3d 859 (2007). A failure to allege specific facts "may render the charging document vague, but it is not constitutionally defective." *Id*. at 340. A vague information "may be corrected under a bill of particulars." *Leach*, 113 Wn.2d at 687. Where a defendant fails to request a bill of particulars at trial, he waives any challenge to the information for vagueness. *State v. Mason*, 170 Wn. App. 375, 385, 285 P.3d 154 (2012).

When, as here, a defendant challenges an information's sufficiency for the first time on appeal, we construe the document liberally in favor of validity. *Rivas*, 168 Wn. App. at 887. We examine the information as a whole to determine whether the essential elements appear in any form or can be found by any fair construction, and whether the defendant was prejudiced by the inartful language. *State v. Brown*, 169 Wn.2d 195, 198, 234 P.3d 212 (2010). If we "can neither find nor fairly imply an essential element of the crime in the charging document," prejudice is presumed and reversal is required. *Rivas*, 168 Wn. App. at 888. This is true even if the defendant had actual knowledge of all of the essential elements of the crime charged against him. *Id*.

B.      The Information Was Not Deficient

A person is guilty of first degree trafficking in stolen property if he or she "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property." RCW 9A.82.050.

The information, in relevant part, consisted of the following language:

COUNT II—TRAFFICKING IN STOLEN PROPERTY IN THE FIRST DEGREE

The defendant, in the County of Cowlitz, State of Washington, on or about 05/12/2014, did knowingly initiate, organize, plan, direct, or supervise the theft of property for sale to others, or did knowingly traffic in stolen property, contrary to RCW 9A.82.050(1) and against the peace and dignity of the State of Washington.

. . . .

COUNT IV—TRAFFICKING IN STOLEN PROPERTY IN THE FIRST DEGREE

The defendant, in the County of Cowlitz, State of Washington, on or about 06/14/2014, did knowingly initiate, organize, plan, direct, or supervise the theft of property for sale to others, or did knowingly traffic in stolen property, contrary to RCW 9A.82.050(1) and against the peace and dignity of the State of Washington.

CP at 22.

Garay argues the information omitted "critical facts" because it did not specifically detail which stolen items he trafficked. Br. of Appellant at 16. But the information is not required to contain critical facts. *Laramie*, 141 Wn. App. at 340. It need only include the essential elements of the crime and the facts that support them "in any form" or that "can be found by any fair construction." *Brown*, 169 Wn.2d at 198.

Garay does not allege that the information failed to include essential elements. The information mirrors the language of every statutory element enumerated in RCW 9A.56.050(1)(a) and identifies the dates on which Garay was accused of trafficking in stolen property. Indeed, the fact that each trafficking count provides a different, specific date suggests that Garay had sufficient notice of "'the nature and cause of the accusation against him.'" *Zillyette*, 178 Wn.2d at 158 (quoting *Kjorsvik*, 117 Wn.2d at 97). Further, because Garay did not object to the information, we construe it liberally in favor of validity. *Rivas*, 168 Wn. App. at 887.

12

For these reasons, we hold that the information was not constitutionally deficient. In addition, because Garay failed to request a bill of particulars at trial, he has waived any challenge that the information was vague. *See Leach*, 113 Wn.2d at 687.

## IV. OFFENDER SCORE

Garay argues that the trial court improperly calculated his offender score because the State failed to prove his prior convictions. We agree.

A.      Legal Principles and Standard of Review

Following a conviction, the sentencing court must determine a defendant's offender score, which is calculated based on the defendant's current offenses and prior convictions. RCW 9.94A.525, .530(1). Challenges to the offender score calculations may be raised for the first time on appeal. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). We review de novo a sentencing court's calculation of an offender score. *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

B.      Establishment of Criminal History

In order to establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence. RCW 9.94A.500(1); *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The best evidence of a prior conviction is a certified copy of the judgment and sentence, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior convictions. *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). Bare assertions by the State fail to meet this burden; it must introduce "'evidence of some kind to support the alleged criminal history.'" *Hunley*, 175 Wn.2d at 910 (quoting *Ford*, 137 Wn.2d at 480).

13

The State can also meet its burden if the defendant affirmatively acknowledges the criminal history on the record. *Id.* at 912. However, the "mere failure to object to State assertions of criminal history at sentencing does not result in an acknowledgement." *Id.* "Nor is a defendant deemed to have affirmatively acknowledged the prosecutor's asserted criminal history based on his agreement with the ultimate sentencing recommendation." *State v. Mendoza*, 165 Wn.2d 913, 928, 205 P.3d 113 (2009). There is a "need for an *affirmative acknowledgment by the defendant of facts and information* introduced for the purposes of sentencing." *Id.*

The State did not prove Garay's offender score by a preponderance of the evidence. The only evidence submitted was the prosecutor's "statement of defendant's criminal history" and oral recitation of Garay's history. CP at 16. *Hunley* held that the State's unsworn and unsupported criminal history summary was insufficient to prove prior offenses because "'a prosecutor's assertions are neither fact nor evidence, but merely argument.'" *Hunley*, 175 Wn.2d at 912 (quoting *Ford*, 137 Wn.2d at 483 n.3). The *Hunley* court held RCW 9.94A.500(1) to be unconstitutional as applied, "insofar as it allows a prosecuting authority to establish the existence and validity of a defendant's prior convictions with an unsupported criminal history summary from the prosecutor." 175 Wn.2d at 917.

That the State in this case offered a sworn summary does not cure the deficiency of a lack of supporting evidence, as it is not comparable to a certified copy of a judgment and sentence. In *In re Personal Restraint of Adolph*, our Supreme Court held that a Department of Licensing driving record abstract and criminal history summary generated by a judicial case management database system met the preponderance of evidence standard. 170 Wn.2d 556, 569-70, 243 P.3d 540 (2010). The court reasoned that those documents are

14

> comparable to a certified judgment and sentence because they are official government records, based on information obtained directly from the courts, and can be created or modified only by government personnel following procedures established by statute or court rule.

*Id*. at 570. The State's sworn summary in this appeal has none of these characteristics. Because it is unsupported by other documents of record or transcripts of prior proceedings, it still amounts only to "merely argument" and so falls short of the preponderance of the evidence standard. *See Hunley*, 175 Wn.2d at 912; *State v. Vickers*, 148 Wn.2d 91, 120, 59 P.3d 58 (2002).

The State argues that Garay agreed that his criminal history, offender scores, and sentencing ranges were correct and it therefore was not required to prove his criminal history. Garay, however, neither signed the statement of his criminal history nor affirmatively acknowledged that history. Although he did acknowledge the accuracy of the State's offender score calculation, this does not amount to an affirmative acknowledgment of criminal history.

In *Mendoza* the State argued that the defendants stipulated to their criminal history by acknowledging the prosecutor's statement of criminal history and recommending a sentence in the range calculated by the prosecuting attorney. 165 Wn.2d at 925-26. The court rejected that argument because the defendants "did nothing *affirmative* with respect to their criminal histories. And the sentencing courts below did not have any *facts or information* on which to find by a preponderance of the evidence that the criminal history was valid." *Id.* at 929

In this case, the only evidence of agreement to or acknowledgment of criminal history is the transcript of the presentence discussions between Garay, the State, and the trial court. In these, the attorneys orally agreed on offender scores and Garay's attorney acknowledged that he never received updated criminal history sheets. While this exchange may suggest a mutual understanding of Garay's criminal history, Garay did nothing affirmative to signal his acknowledgment of the facts and information introduced for the purposes of sentencing. *See*

15

*Mendoza*, 165 Wn.2d at 929.[2]  The State, therefore, failed to show that Garay affirmatively acknowledged his criminal history.

We accordingly hold that the State failed to prove Garay's prior convictions by a preponderance of the evidence.  For this reason, and because our vacation of his third degree theft and second degree burglary convictions may affect Garay's offender score, we vacate his sentence and remand for resentencing.  On resentencing, the court may consider new evidence consistently with *State v. Jones,* 182 Wn.2d 1, 338 P.3d 278 (2014).

## V.  LEGAL FINANCIAL OBLIGATIONS

In supplemental briefing, Garay contends that the trial court's order imposing the criminal filing fee and DNA fee on him conflicts with *Ramirez* and Laws of 2018, chapter 269. In its supplemental brief in response, the State agrees.

We agree with the parties' reading of *Ramirez* and Laws of 2018, chapter 269. Therefore, on remand the sentencing court shall not impose the criminal filing fee or the DNA collection fee.

## CONCLUSION

We affirm Garay's convictions of residential burglary and first degree trafficking in stolen property, but reverse his convictions of third degree theft and second degree burglary.  We remand for resentencing in accordance with this opinion.  On resentencing, the court shall

---

[2] *State v. Jones*, 182 Wn.2d 1, 7, 338 P.3d 278 (2014), disapproved of *Mendoza* to the extent it could be read as prohibiting additional relevant evidence of criminal history at resentencing following remand from appeal or collateral attack.  That is not the issue in the present appeal.

No. 50293-3-II

require adequate proof of criminal history and shall not impose the criminal filing fee or the

DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, J.P.T.

We concur:

Maxa, C.J.

Lee, J.